TALLY v CITY OF DETROIT

1. Municipal Corporations—Intoxicating Liquors—Regulations—
   Home-Rule Cities—Police Power—Liquor Control Commis-
   sion.

   A home-rule city has the power to regulate traffic in the liquor
   business within its own bounds through the exercise of its
   police powers subject to the authority of the Liquor Control
   Commission only when a conflict arises (MCLA 117.4j).

2. Constitutional Law—Police Power—Public Welfare.

   The legitimacy of any exercise of police power depends upon the
   existence of a real and substantial relationship between the
   exercise of those powers in a particular manner in a given case
   and the public health, safety, morals, or the general welfare.

3. Municipal Corporations—Ordinances—Presumptions—Consti-
   tutional Law—Burden of Proof.

   A municipal ordinance is presumed to be constitutionally valid
   and the party claiming that an ordinance is unreasonable has
   the burden of so proving.

---

References for Points in Headnotes

[1] 45 Am Jur 2d, Intoxicating Liquors §§ 23, 24, 102.
   Operation and effect, in dry territory, of general state statute
   making sale or possession for sale of intoxicating liquor, without
   a license, an offense. 8 ALR2d 750.
   Transportation of liquor within state some countries or districts of
   which are "wet" and others "dry". 134 ALR 424.
[2] 16 Am Jur 2d, Constitutional Law §§ 268, 269, 287, 305–308.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
   Political Subdivisions §§ 355, 381–385.
[4, 7, 10, 11] 56 Am Jur 2d, Municipal Corporations, Counties, and
   Other Political Subdivisions §§ 362–366, 381, 382.
[5, 8] 16 Am Jur 2d, Constitutional Law §§ 306, 310.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
   cal Subdivisions § 222.
[6, 8] 16 Am Jur 2d, Constitutional Law §§ 309, 314, 321, 324.
[9, 12] 16 Am Jur 2d, Constitutional Law §§ 316, 323.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
   cal Subdivisions §§ 367, 368.

4. MUNICIPAL CORPORATIONS—POLICE POWER—ORDINANCES—REASON-
   ABLENESS.

   Exercise of police power through the enactment of a municipal
   ordinance must be reasonable in two respects: first, it must be
   for the public welfare, and, second, the measures adopted must
   have relation to the purpose sought to be accomplished.

5. MUNICIPAL CORPORATIONS—POLICE POWER—ILLEGAL ACTIVITIES—
   STRICT REGULATION.

   The protection of the public from illegal activity is a proper
   purpose for the exercise of police power and a business which is
   susceptible to the opportunity of criminal activity is a fit
   subject for strict regulation.

6. MUNICIPAL CORPORATIONS—TOPLESS GO-GO BARS—POLICE POWER—
   PUBLIC WELFARE.

   The operation of a topless go-go bar is a business so far affecting
   the public health, morals, and welfare as to authorize its
   regulation and licensing by a city (Detroit Municipal Code, ch
   5, art 4).

7. MUNICIPAL CORPORATIONS—POLICE POWER—REASONABLENESS—TOP-
   LESS GO-GO BARS—APPEAL AND ERROR.

   A requirement that persons desiring to operate a cabaret must
   first obtain a license and that employees of such establishments
   who desire to dance topless must first obtain an identification
   card from the city police was found by a city's legislative body
   to be reasonably suited to the accomplishment of an objective
   within the city's police power, and such a determination should
   not easily be disturbed (Detroit Municipal Code, ch 5, art 4).

8. MUNICIPAL CORPORATIONS—CONSTITUTIONAL LAW—TOPLESS GO-GO
   BARS—FREEDOM OF SPEECH—PUBLIC WELFARE.

   A municipal ordinance which regulates topless go-go dancers does
   not violate the First Amendment rights of such performers or
   their employers because a city, as agent of the state, has, under
   the Twenty-First Amendment, broad authority over public
   health, welfare, and morals, and because forms of expression
   which are in fact public acts are susceptible of greater regula-
   tion than traditional speech and writings (Detroit Municipal
   Code, ch 5, art 4).

9. MUNICIPAL CORPORATIONS—ORDINANCES—CABARETS—LICENSES—
   CONSTITUTIONAL LAW—VAGUENESS—DISCRETION.

   A municipal ordinance which allows the mayor to deny an
   applicant a license to operate a cabaret upon proof of an arrest
   and conviction is not unconstitutionally vague or overbroad and

does not allow the exercise of unlimited discretion (Detroit Municipal Code, ch 5, art 4).

10. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW—
   EQUAL PROTECTION—RATIONAL BASIS.

   A classification established by ordinance which has a rational basis in fact does not amount to discrimination or arbitrary classification such as to invalidate the ordinance or constitute it class legislation.

11. MUNICIPAL CORPORATIONS—ORDINANCES—CONSTITUTIONAL LAW—
   EQUAL PROTECTION—TOPLESS GO-GO BARS.

   Legislation is not unconstitutional because it is legislation of a particular kind or character so long as the law operates equally upon those within the particular class; therefore a municipal ordinance which requires all female entertainers who desire to dance topless to obtain an identification card, and which prohibits them from acting as waitresses, is not arbitrary or unreasonable or in violation of the equal protection clause (Detroit Municipal Code, ch 5, art 4).

12. MUNICIPAL CORPORATIONS—ORDINANCES—LICENSES—CONSTITU-
   TIONAL LAW—STANDARDS.

   A municipal ordinance which permitted the mayor to refuse to issue a cabaret license for what the mayor might determine to be "good, and satisfactory" evidence that the applicant had violated an ordinance or statute was properly modified by a trial court which allowed the mayor to deny a license only upon proof of arrest and conviction because a more definite standard was required to uphold the ordinance as constitutional (Detroit Municipal Code, ch 5, art 4).

Appeal from Wayne, James N. Canham, J. Submitted Division 1 May 7, 1974, at Detroit. (Docket No. 16490.) Decided July 22, 1974. Leave to appeal applied for.

Complaint by Carol Tally and Jads, Inc., against the City of Detroit, John F. Nichols, Commissioner of the Detroit Police Department, and Michael M. Glusac, Corporation Counsel of the City of Detroit, to have certain amendments of the Detroit City Code pertaining to the regulation of topless go-go dancers declared unconstitutional. The trial court

modified the ordinance, and upheld its constitutionality. Plaintiffs appeal; defendants cross appeal. Affirmed.

*Hampton, Snavely & Ranno,* for plaintiffs.

*Michael M. Glusac,* Corporation Counsel, and *Maureen P. Reilly and John E. Cross,* Assistants Corporation Counsel, for defendants.

Before: BASHARA, P. J., and McGREGOR and VAN VALKENBURG,* JJ.

McGREGOR, J. Before us are topless go-go dancers and a city ordinance attempting to regulate them and their employers. *Jads, Inc v Detroit,* 41 Mich App 693, 699; 200 NW2d 715; decided July 3, 1972, involved the same institutions. At that time Judge (now Justice) LEVIN opined that:

"On remand a declaratory judgment shall be entered granting Jads a judgment declaring that the ordinances in question do not prohibit topless go-go dancing."

In the instant case, the plaintiffs brought an action to have certain amendments of the Detroit City Code pertaining to the regulation of topless go-go dancers declared unconstitutional. The trial court heard the evidence and entered a written opinion in which he upheld the ordinance provisions in question, with one alteration. Following entry of judgment consistent with the opinion, this appeal was taken.

On November 2, 1972, the defendant City of Detroit amended chapter 5, art 4 of the Municipal Code of the City of Detroit. This amended ordinance redefined the term "cabaret" and required

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

such establishments to obtain a license which could be denied or revoked by the mayor for violation of certain ordinances. The amendments further prevented entertainers from performing a secondary activity, such as waiting tables, and required all such entertainers to obtain an identification card from the Detroit Police Department.

Plaintiffs, Jads, Inc., operators of an establishment which came under the amended ordinance, and Carol Tally, an entertainer at this establishment, brought an action seeking declaratory relief under GCR 1963, 521[1] to have the amended sections declared unconstitutional on a number of grounds, primarily as a violation of the First and Fourteenth Amendments. The trial court determined that a violation of an ordinance which would justify denial or revocation of a license must be evidenced by an arrest and conviction. On February 6, 1973, judgment was entered. Plaintiffs filed an appeal, and the defendant municipality filed a cross appeal based upon the trial court's modification of the involved ordinance.

---

[1] GCR 1963, 521. Declaratory Judgments.

".1 Power to Make. In a case of actual controversy within its jurisdiction, any circuit court of this state may declare the rights and other legal relations of any interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

".2 Procedure. The procedure for obtaining declaratory relief pursuant to this rule shall be in accordance with these rules and the right to trial by jury may be demanded under the circumstances and in the manner provided in the constitution, statutes, and court rules of the State of Michigan.

".3 Other Adequate Remedy. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate.

".4 Hearing. The court may order a speedy hearing of an action for declaratory relief and may advance it on the calendar.

".5 Effect; Review. Declaratory judgments shall have the force and effect of final judgments and shall be reviewable as final judgments.

".6 Other Relief. Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by the declaratory judgment."

This Court is asked to determine whether the City of Detroit had the authority to enact certain amendments of chapter 5, art 4 of its municipal code pertaining to the regulation of topless go-go dancers, and whether these amendments are in conflict with state law.

In a written opinion, the trial court found that the Michigan Liquor Control Commission, through its administrative rules, particularly 1954 AACS, R 436.14, has delegated to the City of Detroit the authority to pass upon licensees.

The City of Detroit was not exercising any power delegated to it through the Michigan Liquor Control Commission; rather, it was operating under the authority conferred upon it through the home rule act. The ordinance in question was enacted pursuant to the charter provisions authorized by MCLA 117.4j; MSA 5.2083. In addition, we note that home rule cities may provide "[f]or the regulation of trades, occupations and amusements within its boundaries, not inconsistent with state and Federal laws, and for the prohibition of such trades, occupations and amusements as are detrimental to the health, morals or welfare of its inhabitants". MCLA 117.4i; MSA 5.2082. The City of Detroit exercised its authority by an appropriate charter provision: Title 3, ch 1, § 12(n).

In view of these provisions, it is not necessary for the city to rely upon any authority delegated to it through the Michigan Liquor Control Commission.

"The point here made is that under our constitution and our home-rule cities act, cities may exercise substantially greater powers essential to local self-government than they previously were allowed to exercise." *Dooley v Detroit*, 370 Mich 194, 210; 121 NW2d 724 (1963).

Under the act, cities derive their power from the state and when they exercise state power they are acting as agents of the state. *Hudson Motor Car Co v Detroit,* 282 Mich 69, 78; 275 NW 770 (1937). The city is given a general grant of rights and power subject to certain restrictions. *City of Pontiac v Ducharme,* 278 Mich 474, 480; 270 NW 754 (1936).

Under the provisions of the home rule act, the City of Detroit acted under its general police power, which includes authority from the state to regulate liquor. "Except as limited by the constitution or by statute, the police power of Detroit as a home rule city is of the same general scope and nature as that of the state." *People v Sell,* 310 Mich 305, 315; 17 NW2d 193 (1945). Due to the nature of the liquor business, the City of Detroit has the power to regulate the traffic within its own bounds through the exercise of its police powers, subject to the authority of the Liquor Control Commission only when a conflict arises. *Johnson v Liquor Control Commission,* 266 Mich 682; 254 NW 557 (1934).

Next, plaintiffs argue that the trial court erred in finding that the facility operated by the plaintiff corporation is a cabaret within the definition of § 5-4-1 and, therefore, subject to the licensing provisions set forth in chapter 5, art 4 of the Detroit City Code.

The trial court found that the establishment operated by the plaintiff corporation was a cabaret within the meaning of the definition of the Detroit City Ordinance, to wit: "any place wherein food" and alcoholic beverages by the glass are sold, and which provides entertainment. The manager of the plaintiff establishment testified that food was sold in the lounge and that it was licensed to serve food as well as alcoholic beverages. The trial court's holding in this regard is correct.

Plaintiffs next question whether the provisions of the recent amendments of the Detroit City Code pertaining to the regulation of topless go-go dancers bear a reasonable relationship to the public health, safety, or welfare, thereby constituting a valid exercise of the police power.

The trial court found that this ordinance was meant to control the manner and circumstances under which alcoholic beverages were dispensed and, as such, was reasonably related to the public health, welfare, and morals so as to constitute a valid exercise of the general police power. The court determined that the license and identification card requirements were reasonably related to a valid governmental purpose—protection of the public from illegal activity.

The legitimacy of any exercise of police power depends upon "the existence of a real and substantial relationship between the exercise of those powers in a particular manner in a given case and the public health, safety, morals, or the general welfare". *Grocers Dairy Co v Dept of Agriculture Director,* 377 Mich 71, 76; 138 NW2d 767 (1966). An ordinance will be presumed to be constitutionally valid. *Watnick v Detroit,* 365 Mich 600, 606; 113 NW2d 876 (1962). The party claiming that an ordinance is unreasonable has the burden of so proving. *Michigan Towing Association, Inc v Detroit,* 370 Mich 440, 455; 122 NW2d 709 (1963).

Exercise of police power through the enactment of a municipal ordinance must be reasonable in two respects:

"There are two very important essentials to a reasonable and proper exercise of police power. They are *first,* that it must be for the public welfare, and *second,* that the measures adopted must have relation to the purpose sought to be accomplished." *Parkes v Judge of*

*Recorder's Court,* 236 Mich 460, 466–467; 210 NW 492 (1926).

It cannot be doubted that the protection of the public from illegal activity is a proper purpose for the exercise of police power. A business which is susceptible to the opportunity for criminal activity "is a fit subject for strict regulation". *Rassner v Federal Collateral Society, Inc,* 299 Mich 206, 224; 300 NW 45 (1941). The operation of a topless go-go bar is "a business so far affecting the public interest as to authorize the regulation and the licensing of the same * * * on the ground that the business so far affects the public health, morals and welfare as to warrant it". *People v Harley,* 230 Mich 676, 681; 203 NW 531 (1925).

Since this type of business activity directly affects the public welfare, the City of Detroit has the authority to regulate it.

"Having the power to regulate, the only question which remains to be determined is, whether the regulation in this ordinance is reasonable." *Knack v Velick Scrap Iron & Machinery Co,* 219 Mich 573, 575; 189 NW 54 (1922).

The propriety of the relationship between the character of the remedy and the public need should be determined by the legislative body, and that determination should not easily be disturbed. *Carolene Products Co v Thomson,* 276 Mich 172, 178; 267 NW 608 (1936). The ordinance in question, which requires that persons desiring to operate a cabaret must first obtain a license and that employees of such establishment who desire to dance topless must first obtain an identification card has been found by the legislative body of the City of Detroit to be reasonably suited to the accomplishment of an objective within the city's

police power. A requirement that private employment agencies be licensed was held to be a proper exercise of the police power in *Brazee v Michigan,* 241 US 340; 36 S Ct 561; 60 L Ed 1034 (1916). A Detroit ordinance requiring the licensing of television service dealers was upheld in *People v Murphy,* 364 Mich 363; 110 NW2d 805 (1961).

Plaintiffs next contend that the trial court erred by ruling that the provisions of the recent amendments of the Detroit City Code pertaining to the regulation of topless go-go dancers do not violate the First Amendment rights of such performers or their employers.

The trial court found that the regulations fell within the broad purview of the Twenty-First Amendment, as interpreted by the Supreme Court in *California v LaRue,* 409 US 109; 93 S Ct 390; 34 L Ed 2d 342 (1972), and held that the corporate plaintiff "did not produce or promote an activity protected by the First Amendment". This decision was followed in *Paladino v City of Omaha,* 471 F2d 812, 814 (CA 8, 1972).

"We understand the rule in *LaRue* to be that under the twenty-first amendment, the state (or city) may proscribe sexually oriented performances, not otherwise obscene or illegal, in establishments which it licensed to sell liquor by the drink."

In support of their argument that the First Amendment precludes regulation of topless dancing, the plaintiffs have cited no Michigan cases, relying almost exclusively on a California case, *Perrine v Los Angeles Municipal Court,* 5 Cal 3d 656; 97 Cal Rptr 320; 488 P2d 648 (1971). This case is not in point, as it involved a license to operate a book store.

The United States Supreme Court's opinion in

*LaRue, supra,* has been quoted extensively by the trial court. It should be noted that the facts in *LaRue* are very similar to those in the instant case. The California Department of Alcoholic Beverage Control promulgated rules regulating the type of entertainment which could be presented in establishments that it licensed. A three-judge district court panel held that these regulations were invalid. The Supreme Court reversed, pointing out that the Twenty-First Amendment conferred upon the states broad authority over public health, welfare, and morals. The Court also noted that forms of expression which are in fact public acts are susceptible of greater state regulation than traditional speech or writings. Justice Rehnquist, author of the majority opinion, stated:

"The department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational one. Given the added presumption in favor of the validity of the state regulation in this area that the Twenty-First Amendment requires, we cannot hold that the regulations on their face violate the Federal Constitution."

In view of this decision, it cannot be said that the ordinance in question is invalid as in violation of the plaintiffs' constitutional rights.

Another contention of plaintiffs is that the trial court erred in ruling that the provisions of the recent amendments of the Detroit City Code which pertain to the regulation of topless go-go dancers include reasonably definite standards, so as not to be vague or overbroad, and not requiring the exercise of unlimited discretion for their enforcement.

Plaintiffs' argument is concerned with the

vagueness and overbreadth of the ordinance insofar as it permits the licensing authority to exercise unlimited discretion. Under this ordinance, the mayor is not allowed to deny an applicant a license unless proof is submitted to him that the applicant violated either an ordinance or a statute. The trial court modified this provision to allow the mayor to deny a license only upon proof of an arrest and conviction. Instances in which licensing provisions have been struck down as unconstitutional because they lend themselves to the exercise of unlimited discretion in the absence of sufficient standards appear to be limited to cases in which no attempt has been made objectively to establish ascertainable standards. The ordinance is not unconstitutionally vague or overbroad and it does not allow the exercise of unlimited discretion. *Johnson v Commissioner of Agriculture,* 314 Mich 548, 564–565; 22 NW2d 893 (1946); *People v Riksen,* 284 Mich 284; 279 NW 513 (1938); *Prawdzik v Grand Rapids,* 313 Mich 376; 21 NW2d 168 (1946).

Plaintiffs also argue that the provisions of recent amendments of the Detroit City Code pertaining to the regulation of topless go-go dancers are unreasonable so as to deny equal protection of the law.

Michigan cases have long recognized a principle that a classification established by ordinance which has a rational basis in fact "does not amount to discrimination or arbitrary classification such as to invalidate the ordinance or constitute it class legislation". *Ritter v City of Pontiac,* 276 Mich 416, 422; 267 NW 641 (1936). The basis for the classification will be presumed to be reasonable in the absence of clear evidence to the contrary. In the instant case, not only is evidence to the contrary lacking, but there is clear evidence supporting the rationality of the classification.

*People's Appliance, Inc v City of Flint,* 358 Mich 34; 99 NW2d 522 (1959), quoting from *People v DeRose,* 230 Mich 180, 184; 203 NW 95 (1925). The special treatment afforded topless go-go dancers is designed to minimize opportunity for violation of other penal statutes and ordinances.

"It is not in our view that kind of classification which does not bear a reasonable relationship to the object of the legislation." *Alexander v Detroit,* 45 Mich App 7, 14; 205 NW2d 819 (1973), and Appendix.

In the instant case, the ordinance operates equally upon all those within the particular class. All female entertainers who desire to dance topless are required to obtain an identification card, and they are prohibited from activities as waitresses. "This Court has many times held that legislation is not unconstitutional because it is legislation of a particular kind or character * * * so long as the law operates equally upon those within the particular class. * * * This amendment includes all within the respective classes; consequently, it is not arbitrary or unreasonable." *Burgess v Detroit,* 359 Mich 269, 280; 102 NW2d 483 (1960).

The evidence presented in this case was not sufficient to establish that the ordinance in question was unconstitutional as a violation of the equal protection clause. "In the presence of the presumption of constitutionality and in the absence of contrary proof, we cannot say from this record that the classification was so patently unreasonable and arbitrary as to be unconstitutional and void." *Patchak v Lansing Twp,* 361 Mich 489, 498; 105 NW2d 406 (1960).

Plaintiffs further contend that the trial court erred in ruling that a provision of the recent amendments to the Detroit City Code pertaining to the regulation of topless go-go dancers and their employers which allows the mayor to refuse to issue or to revoke a license upon a showing of a "violation" of certain related statutes or ordinances constitutes an invalid exercise of the police power, and that the section must be modified to require a showing of an arrest and conviction.

The trial court found that this section of the ordinance (as originally written, it refers merely to a "violation") was not a reasonable exercise of the police power because this standard was too vague.

In *Eastwood Park Amusement Co v Mayor of East Detroit,* 325 Mich 60; 38 NW2d 77 (1949), the court below held that part of the ordinance allowing the mayor to revoke an amusement park license "for good satisfactory reasons" was unconstitutional. However, the balance of the ordinance was sustained. Our Supreme Court affirmed this determination because the section in question allowed the revocation of a license without a sufficient showing of satisfactory reasons for the action and thereby failed to establish proper standards.

In the instant case, the degree of evidence of a violation rests with the mayor's determination of what is "good and satisfactory." The trial court properly ruled that a more definite standard was required in order to uphold the ordinance. His determination should not be disturbed.

Other issues raised by the parties have been considered and are not material to the results.

Judgment affirmed. No costs to either party, a public question being involved.

All concurred.