## HUGHES v. CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS — ORDINANCES — LICENSES — STREET VENDORS—EXCESSIVE FEE—TAX.

An annual license fee ranging from $1 for street vendors who use no vehicles to $25 for those who use vehicles drawn by animals or mechanically propelled vehicles, required by an ordinance of the city of Detroit regulating street vendors, hucksters, and peddlers, is not so excessive as to render the ordinance invalid, nor does it amount to a tax.

2. SAME—POWER OF MAYOR TO GRANT LICENSE—VALIDITY—ARBITRARY AUTHORITY—DISCRETION—DELEGATION OF POWER.

Where an ordinance states a standard for the guidance of the mayor in granting licenses thereunder, and his official discretion to grant or refuse a license upon investigating the facts is limited to determining whether the requirements prescribed by the ordinance have been met, and an abuse of discretion would be subject to review, it cannot be said that the ordinance is invalid because it delegates uncontrolled licensing power to him, with authority to arbitrarily grant or refuse.

3. SAME—ORDINANCES—CLASSIFICATION FOR PURPOSES OF LICENSE —CONSTITUTIONAL LAW.

Classification in a city ordinance for the purpose of police regulation does not violate any constitutional equality rights where it is based on some legitimate distinction, and the regulations affect all members of the class alike under like conditions.

4. SAME—PRODUCERS—MIDDLEMEN.

For the purpose of classification, the distinction between producers and middlemen, in an ordinance of the city of Detroit regulating street vendors, hucksters, and peddlers, is reasonable and legitimate.

5. SAME—STREET VENDORS — LICENSING PRODUCERS — LEGISLATIVE QUESTION.

To what extent the producer's manner of selling · his

On license or occupation tax on hawkers and peddlers and persons engaged in soliciting orders by sample or otherwise as a violation of the police power, see notes in 19 L. R. A. (N. S.) 297 and 28 L. R. A. (N. S.) 265.

On validity of ordinance regulating conduct of licensed street hucksters or peddlers, see note in 8 L. R. A. (N. S.) 304.

product direct to the consumer should be regulated when it invades the streets and assumes the characteristics of hawking or peddling is purely a legislative question.

6. SAME—ORDINANCES—STREET VENDORS—LICENSES—REASONABLE-NESS OF REGULATIONS.

The wearing of a badge, displaying a license plate on a vehicle, and a photograph attached to credentials are not unfamiliar requirements in modern times for the purpose of identification, nor can it be said, as a matter of law, that such requirements of licensed street vendors are either so oppressive or foreign to the purpose of the ordinance as to invalidate the same.

7. SAME—ORDINANCES—TITLES.

Constitutional provisions as to titles of laws do not apply to city ordinances.

8. SAME—AMENDMENTS TO ORDINANCE—VALIDITY.

Where amended sections of an ordinance of the city of Detroit were published at length, thus substantially complying with the provision of the city charter that "No ordinance shall be revised, altered, or amended by reference to its title only, but the sections of the ordinance altered or amended shall be re-enacted and published at length," they were not invalid because they failed to specify that they were "amended to read as follows."

Appeal from Wayne; McDonald (John S.), J., presiding. Submitted November 1, 1921. (Docket No. 119.) Decided March 30, 1922.

Bill by George Hughes and others against the city of Detroit and others to restrain the enforcement of an ordinance. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

*Cosino M. Minardo* (*J. Shurly Kennary*, of counsel), for plaintiffs.

*Walter Barlow* (*Clarence E. Wilcox*, of counsel), for defendants.

STEERE, J. George Hughes and over 300 other

plaintiffs residing in the city of Detroit engaged in the business of hucksters with, as they allege, large invested capital and established trade, filed this bill to restrain the city from enforcing through its police department the provisions of an ordinance adopted by its common council in June, 1920, and thereafter twice amended, entitled, "An ordinance to regulate the business of and to provide a license for street vendors, hucksters and peddlers and to provide a penalty for a violation thereof."

Plaintiffs concede the authority of the common council of the city of Detroit to regulate the business of hucksters, but contend that the ordinance as enacted and amended is in its scope oppressive, unreasonable and void for the following reasons, as stated in the brief of plaintiffs' counsel:

"It discriminates. It does not operate generally and impartially. The regulations are unreasonable. It imposes a tax."

The portions of the ordinance which plaintiffs contend particularly brand it as invalid, because discriminatory, not of general and impartial operation, and delegates arbitrary licensing power to an administrative official, are as follows:

"SECTION 1. No person shall follow the business or occupation of a street vendor within the limits of the city of Detroit, without a license from the mayor.

"SEC. 2. For the purpose of this ordinance 'street vendor' shall include 'huckster' and 'peddler' and shall be defined to be any person who sells or peddles on the city streets or alleys or from door to door of homes, offices, stores, hotels, restaurants or other places of business, 'food or other products not produced, manufactured or made by himself.' For the purposes of this ordinance the word 'person' when used shall include any person, persons, firms or corporations.

"SEC. 3. The mayor is hereby authorized to issue a license to any resident of the city of Detroit of

good character, who is a citizen of the United States, or who has declared his intention of becoming a citizen of the United States, as a street vendor, provided such person complies with all the requirements of this ordinance and pays into the city treasury, through the proper department, the sum prescribed in section 4 of this ordinance. All licenses granted under this ordinance shall expire on May 31st of each year, unless sooner revoked. No license shall be transferred nor assigned. However, any licensee for good cause shown may have a special permit issued to any person he may designate to operate under his license.    *    *    *
The mayor may, in his discretion, refuse to grant a license to any person, if, upon investigation, the facts so warrant such refusal.

"SEC. 4.    Licenses issued to street vendors shall be charged and paid for according to the following rate:

"For street vendors who use no vehicles, $1.00.

"For helpers or assistants to street vendors who use vehicles, the sum of $2.00.

"For street vendors who use hand or 'push' carts, the sum of $10.00.

"For street vendors who use vehicles drawn by animals or mechanically propelled vehicles, the sum of $25.00."

The claim that the annual license fee imposed imports invalidity because excessive and a tax is without merit under abundant authority. *O'Hara* v. *Collier*, 173 Mich. 611 (Ann. Cas. 1914D, 936), where that question is discussed with numerous citations.

By fair construction this ordinance does not delegate uncontrolled licensing power to the mayor, with authority to arbitrarily grant or refuse. The ordinance states a standard for his guidance, prescribing the requirements and conditions under which license may issue. His official discretion to grant or refuse a license upon investigating the facts is limited to determining whether the requirements prescribed by the ordinance have been met. A capricious abuse of that discretion, as tested by the standard so set, would be subject to review.

Plaintiffs' contention that the ordinance is discriminatory runs with the claim that it does not operate generally and impartially upon all, and is in contravention of constitutionally guaranteed equality of rights, because it only imposes upon or permits a license to residents of Detroit who are, or have declared their intention to become, citizens of the United States and are engaged in street vending of products not made or produced or manufactured by themselves, while at the same time excluding from its provisions those who themselves "produced, manufactured or made" the products they so vended, whether citizens, aliens, firms or corporations.

Proper classification for the purpose of police regulation does not violate any constitutional equality rights. It is only required that the classification be based on some legitimate distinction and the regulations affect all members of the class alike under like conditions. The broad distinction here is between the producer and the middleman, of a particular type in which the itinerant and intrusive methods of vending have long and almost universally made his business a subject of police regulation and surveillance. For the purposes of classification this distinction is reasonable and legitimate. To what extent the producer's manner of selling his product direct to the consumer should be regulated when it invades the streets and assumes the characteristics of hawking or peddling is purely a legislative question.

The ordinance involves, as it declares, "the peace, health and safety of the people of the city of Detroit" and protection of the same is the legitimate scope of its regulations. Concededly its regulations must be related to that purpose and reasonably essential to the protection sought. Appealing to that principle plaintiffs insist that various regulations imposed by this ordinance are unnecessary to the object sought,

impractical, annoying, humiliating and unreasonable.

The ordinance provides that a license shall be furnished by the city to the licensee, accompanied with a metal badge having his number one-half inch high on it, which he must wear "during the time he peddles in a conspicuous place on the front of his coat or hat," also two tin license plates with the number of his license 1½ inches high and other data on it which he must place "one on each side and towards the front end of the vehicle he operates;" that when peddling he must carry his license with him which shall contain his photograph, "name, address, physical description and name of the class of his license," and that a licensee who sells or expects to sell foodstuffs must also "have a permit from the commissioner of health countersigned by the director of the bureau of markets of the Detroit department of welfare" before a license is granted to him. A complete record of all this, including his photograph, is to be kept on file in the bureau of markets of the department of public welfare. Those and other less stressed regulations of conduct while vending are urged as in various features and details unnecessary to the purpose of the ordinance and an unreasonable imposition upon the business and person of a resident citizen of Detroit of good character, as all licensees must be.

Plaintiffs state in their bill of complaint that their business is that of hucksters, properly classified and defined in the ordinance as synonymous with peddling and hawking, though by later lexicographers sometimes given a distinctive shade of reference to garden or agricultural products as "A retailer of small articles; a hawker, a peddler; now, especially, a small dealer in agricultural products."—Cent. Dict. Whatever commodities are dealt in by the street vendor of the class defined in the ordinance the peculiarities and possibility of imposition on the public have long

stamped that business as especially appropriate for police regulation. Many utterances to that effect are found in our text books and reported cases. It was said by Justice COOLEY in *People* v. *Russell*, 49 Mich. 619 (43 Am. Rep. 478):

"That the regulation of hawkers and peddlers is important if not absolutely essential may be taken as established by the concurring practice of civilized States."

The wearing of a badge, displaying a license plate on a vehicle and a photograph attached to credentials are not unfamiliar requirements in modern times for the purpose of identification, nor can it be said as a matter of law that such requirements of licensed street vendors are either so oppressive or foreign to the purpose of the ordinance as to invalidate the same. In considering those objections it is to be borne in mind that this ordinance is not to regulate a private business conducted on private premises. Peddling, hawking and huckstering, or street vending, necessarily involve occupation and use of highways which are public property dedicated to travel and transportation, of which the city is a trustee with power to control and regulate for such public purpose.

Counsel for plaintiffs also attack the validity of the amendments of this ordinance because they do not specify that certain sections designated by number are "amended to read as follows," and the second amendment purporting to amend the first enacts a numbered section not found in the first amendment, but is in the original ordinance. Constitutional provisions as to titles of laws do not apply to city ordinances (*People* v. *Wagner*, 86 Mich. 594 [13 L. R. A. 286, 24 Am. St. Rep. 141]), and the charter of Detroit simply provides upon the subject, as applicable here:

"No ordinance shall be revised, altered or amended

by reference to its title only, but the sections of the ordinance altered or amended shall be re-enacted and published at length."

The title of the original ordinance is twice repeated in each amendment, both in its title and enacting clause. Correspondingly numbered sections of more or less similar import to the original, in effect altering or amending or re-enacting them, are enacted and set out at length in the amendments. No question is raised as to their having been published at length.

While it might have been more graphically expressed in fewer words by following the seasoned form for amendments more closely, we conclude substantial compliance with the charter requirements is shown and the last enactment of each section, whether in the original or in the amendments, stands as valid legislation upon the subject.

This bill is filed on the theory that the ordinance is for the reasons urged fundamentally invalid and the relief asked is an injunction to restrain its enforcement because void *in toto* and of no force and effect. The invalidity of its various provisions was pressed in the lower court and here to that end. No concrete case involving any administrative feature of the ordinance is before us. The construction of some particular provision as applied to a particular person or condition not vital to the validity of the ordinance is not for determination in this proceeding.

The decree of the lower court affirming the validity of the ordinance in its dominant features is sustained, with costs to defendants.

FELLOWS, C. J., and CLARK, BIRD, SHARPE, and MOORE, JJ., concurred. WIEST, J., concurred in the result.

The late Justice STONE took no part in this decision.