TALLY v CITY OF DETROIT (ON REHEARING)

1. LICENSES—MUNICIPAL CORPORATIONS—DUE PROCESS—NOTICE—
   HEARING—STATEMENT OF CHARGES—RIGHT TO CROSS-EXAMINE—
   RIGHT TO PRODUCE WITNESSES—FAIR DETERMINATION.

   A licensee whose business license is to be revoked by a municipal-
   ity is entitled to: (1) notice of time and place of hearing, (2) a
   hearing before a properly authorized body, (3) a reasonably
   definite statement of the charge or charges preferred against
   him, (4) the right to cross-examine the witnesses who testify
   against him, (5) the right to produce witnesses in his own
   behalf, and (6) a full consideration and a fair determination
   according to the evidence of the controversy by the body before
   whom the hearing is had.

2. MUNICIPAL CORPORATIONS—ORDINANCES—LICENSES—LICENSE REVO-
   CATION—DUE PROCESS.

   The requirements of procedural due process are implied in an
   ordinance governing license revocation where there is no ex-
   press provision for these requirements in the ordinance.

3. MUNICIPAL CORPORATIONS—LICENSES—LICENSING AUTHORITIES—
   REVOCATION OF LICENSE—BASIS OF REVOCATION—VIOLATION OF
   LAW—CONVICTION—JUDGMENT—EVIDENCE.

   A statute or ordinance which directs the revocation of a license
   for "violation" of the laws permits licensing authorities to
   revoke a license on evidence other than a judgment of convic-
   tion even though the licensee has been acquitted of the crimi-
   nal charge which is the basis of the revocation.

4. MUNICIPAL CORPORATIONS—ORDINANCES—LICENSE REVOCATION—
   BASIS OF REVOCATION—VIOLATION OF LAW—POLICE POWER—
   DUE PROCESS.

   A municipal ordinance providing for the revocation of the license
   of a regulated business upon proof of the violation of certain
   laws is a reasonable exercise of police power, provides sufficient

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 51 Am Jur 2d, Licenses and Permits §§ 142–147.
   Ordinance providing for suspension or revocation of state-issued
   driver's license as within municipal power. 92 ALR2d 204.

standards for the revocation of a license, and does not violate the due process requirements of the United States or Michigan Constitutions (Detroit City Code § 5-4-5).

Appeal from Wayne, James N. Canham, J. Submitted Division 1 May 7, 1974, at Detroit. (Docket No. 16490). Decided February 10, 1975.

Complaint by Carol Tally and Jads, Inc., against the City of Detroit, John F. Nichols, Commissioner of the Detroit Police Department, and Michael M. Glusac, Corporation Counsel, to have certain amendments of the Detroit City Code pertaining to the regulation of topless go-go dancers declared unconstitutional. The trial court modified the ordinance and upheld its constitutionality. Plaintiffs appealed and defendants cross appealed. Affirmed, 54 Mich App 328 (1974). On rehearing, affirmed in part and reversed in part.

*Hampton, Snavely, Ranno, Lightbody & Girard,* for plaintiffs.

*Elliott S. Hall,* Corporation Counsel, and *Maureen P. Reilly* and *John E. Cross,* Assistants Corporation Counsel, for defendants.

Before: BASHARA, P. J., McGREGOR and VAN VALKENBURG,* JJ.

McGREGOR, J. On October 7, 1974, this Court granted a petition for rehearing of this case pursuant to petitions for rehearing filed by all parties in this controversy. On its own motion, this Court requested that the parties file supplemental briefs on the following two issues only:
1. Whether § 5-4-5 of the Detroit City Code pro-

_____
* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

vides sufficient standards to uphold the revocation of a license; and

2. Whether § 5-4-7.4 of the Detroit City Code bears a reasonable relationship to the police power granted to municipalities?

This Court, after an extensive review of our prior decision, deems it necessary to address only the first issue. We reaffirm our original opinion cited in 54 Mich App 328; 220 NW2d 778 (1974), with the following modifications.

I. Does § 5-4-5 of the Detroit City Code provide sufficient standards to uphold the revocation of a license?

Section 5-4-5 of the Code of the City of Detroit, as amended November 2, 1972, provides:

"The mayor may refuse to issue a license for the operation of any business regulated by this article and may revoke any license already issued upon proof submitted to him of the violation by any applicant, or a licensee, his agent or employee within the preceding two years of any criminal statute of the state or of any ordinance of this city regulating, controlling or in any way relating to the construction, use or operation of any of the establishments included in this article, which evidences a flagrant disregard for the safety or welfare of either the employees, patrons or persons residing or doing business nearby."

In our original opinion, we affirmed the trial court's conclusion that this ordinance, as written, which refers merely to a "violation", was not a reasonable exercise of the police power. We held that the trial court properly ruled that a more definite standard was required in order to uphold the ordinance and affirmed his modification of the ordinance to require a showing of an arrest and conviction before a license could be revoked. Subsequent reflection convinces us that the ordinance,

as written, is a reasonable exercise of the police power, and the standards provided for determining whether or not a license should be issued or revoked do not violate the constitutional requirements of due process contained in either the United States or Michigan Constitutions.

There is no dispute that the revocation of the license must comply with procedural due process. Unless the right is waived, the licensee is at least entitled to:

"(1) Notice of a time and place of hearing.

"(2) A hearing before a properly authorized body.

"(3) A reasonably definite statement of the charge or charges preferred against the accused.

"(4) The right to cross-examine the witnesses who testify against him.

"(5) The right to produce witnesses in his own behalf.

"(6) A full consideration and a fair determination according to the evidence of the controversy by the body before whom the hearing is had. *Hanson v State Board of Registration in Medicine,* 253 Mich 601, 607; 236 NW 225 (1931)." *Napuche v Liquor Control Commission,* 336 Mich 398, 403–404; 58 NW2d 118 (1953).

The appellees candidly admit that, even though there is no express provision for procedural due process in the ordinance, the requirements of reasonable notice and opportunity to be heard must be implied. *Rydd v State Board of Health,* 202 Kan 721; 451 P2d 239 (1969). However, appellees dispute the Court's interpretation that due process requires that the term "violation" as used in the ordinance be interpreted to mean "conviction" of the charged offense.

The trial court erred in failing to recognize the distinction between the requirement of showing a "conviction" and showing a "violation" as a cause for revoking a license. This distinction is discussed

in 48 CJS, Intoxicating Liquors, § 175, pp 285–286, as follows:

"If the statute directs the revocation of the license on 'conviction' of such an offense, there must first have been a final judgment, conclusively establishing guilt, rendered by a court of competent jurisdiction; but, when the cause of revocation is specified as a 'violation' of the laws, the licensing authorities may act on other evidence than a judgment of conviction, and the license may be revoked, even though the licensee has been acquitted of a criminal charge for the same violation as is made the basis of the revocation."

The distinction between proof of a violation of an ordinance as a basis for the revocation of a license, as opposed to proof of a conviction for violation of an ordinance, has long been recognized in Michigan. *People v Riksen,* 284 Mich 284; 279 NW 513 (1938); *Prawdzik v Grand Rapids,* 313 Mich 376; 21 NW2d 168 (1946); *Johnson v Commissioner of Agriculture,* 314 Mich 548; 22 NW2d 893 (1946).[1]

In *Riksen, supra,* the Court upheld an ordinance which required hawkers and peddlers to be licensed; the ordinance provided that the mayor may suspend a license for violation of a city ordinance, violation of the terms of the license, or for

---

[1] Such a distinction has been made in the Liquor Control Act (MCLA 436.20; MSA 18.991), wherein the Liquor Control Commission has the power to suspend or revoke any license upon a showing of a violation of any of the provisions of the Liquor Control Act or any of the rules and regulations adopted by the commission under the act. The statute authorizes civil or criminal action, and clearly provides that an acquittal or conviction shall not prevent the suspension or revocation of licenses. *Shinavier v Liquor Control Commission,* 315 Mich 188; 23 NW2d 634 (1946); *Tift v Liquor Control Commission,* 315 Mich 198; 23 NW2d 696 (1946). Courts in other jurisdictions have likewise recognized the distinction. *Jow Sin Quan v Washington State Liquor Control Board,* 69 Wash 2d 373; 418 P2d 424 (1966); *Legones v License Appeal Commission of the City of Chicago,* 100 Ill App 2d 394; 241 NE2d 499 (1968).

undesirable business practices. The Court held
that the ordinance did not give the mayor an
arbitrary power to suspend a license, since the
ordinance provided a standard for his guidance
and bounds within which his discretion may be
exercised.

In *Eastwood Park Amusement Co v Mayor of
East Detroit,* 325 Mich 60; 38 NW2d 77 (1949), the
Court held that the part of an ordinance which
allowed the mayor to revoke an amusement park
license "for good satisfactory reasons", was uncon-
stitutional. The Court stated that the ordinance
vested the mayor with arbitrary power to revoke
licenses. Revocation of a license "for good and
satisfactory reasons" is insufficient, in that it de-
prives the licensee of the legal safeguards to which
he is entitled before a license can be revoked. A
notice which states that a license is being revoked
for "good and satisfactory reasons" does not com-
ply with the due process requirement that a li-
censee is entitled to be served with a concise and
definite statement of the charge prior to the revo-
cation hearing. A revocation based on such
grounds deprives a licensee of his right to cross-
examine the witnesses who testify against him and
of his right to produce witnesses in his own behalf.
Further, such a standard nullifies the requirement
that the final decision be based on a fair determi-
nation according to the evidence presented at the
hearing.

Contrary to the standard of "good and satisfac-
tory reasons" in the *Eastwood* case, the standard
of "proof of violation" of an ordinance does not
vest the mayor, acting on a petition for revocation,
with arbitrary power. "Proof of violation" provides
a definite standard and adequately protects the
rights of the licensee. Under this standard, a
licensee can be given a definite statement of the

charge or charges preferred against him. Since the licensee knows that he is charged with a violation of a particular ordinance, he can intelligently exercise his right to cross-examine the witnesses who testify against him and can produce witnesses in his own behalf. As stated in *Riksen, supra,* p 290:

"Under this ordinance the mayor may suspend a license for violation of a city ordinance, * * * . A fair construction of this section of the ordinance indicates that the mayor may not arbitrarily suspend a license. The ordinance directs a standard for his guidance and conditions under which suspension may be accomplished. The only discretion the mayor has under the terms of this ordinance is to determine whether there has been a violation of the ordinance for any of the reasons mentioned. In *Hughes v City of Detroit,* 217 Mich 567; 187 NW 530 (1922), we said:

" 'A capricious abuse of that discretion, as tested by the standards so set, would be subject to review.' "

Section 5-4-5 of the Detroit City Code provides sufficient standards to uphold the revocation of a license; therefore, the trial court erred by ruling that a more definite standard was required in order to uphold the ordinance.

Affirmed in part, reversed in part. No costs, a public question being involved.