Frank D. **FELIX** d/b/a Club Zeus, Plaintiff-Appellant,

v.

Coleman A. **YOUNG,** Mayor, City of Detroit, et al., Defendants-Appellees.

No. 75–1763.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 18, 1976.

Decided June 17, 1976.

Stephen M. Taylor, Taylor & Rubin, Detroit, Mich., S. Richard Schneider, Schneider, Weisberg & Meisner, Southfield, Mich., for plaintiff-appellant.

Elliott S. Hall, Maureen P. Reilly, John E. Cross, Detroit, Mich., for defendants-appellees.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

Appellant, Frank D. Felix, appeals the grant of summary judgment for Defendants in an action brought under 42 U.S.C. section 1983 (1970). Appellant owns the Club Zeus, a bar in Detroit which features "topless" dancing. He brought this suit against various city officials [1] seeking to enjoin the enforcement of certain municipal

---

1. Named as Defendants were the present and former mayors of Detroit, the Detroit Corporation Counsel, the Commissioner of the Police Department, the Commissioner of the Department of Building and Safety, and the Director-Secretary of the City Planning Commission.

ordinances which regulate the location of businesses providing adult entertainment.

The Club Zeus is a Group "D" Cabaret as described by ordinance:

A cabaret which features topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers.[2]

As a condition to receiving a cabaret license, Appellant was required to comply with special zoning restrictions, notably a prohibition against the establishment of a Group "D" Cabaret within 1000 feet of two other "regulated uses."[3] The District Court found that there are three other reg-

ulated uses within 1000 feet of Club Zeus and that Appellant has not obtained a waiver of the restriction as provided by ordinance.[4] Appellant claims that he need not seek waiver of the zoning restrictions because the municipal ordinances regulating the location of Group "D" Cabarets are unconstitutional, both on their face and as applied. He contends that the provisions are overbroad because they infringe on forms of expression protected by the First Amendment. He also claims that the ordinances violate the Equal Protection Clause of the Fourteenth Amendment because they classify businesses according to the content of expression offered the public.

2. Detroit, Mich., Ordinance No. 744–G § 5–4–1, October 26, 1972. *See also* Ordinance No. 742–G § 32.0007.

3. Ordinance No. 744–G which lists the requirements for a Group "D" Cabaret license incorporates provisions of the city zoning code by reference:

Sec. 5–4–2. It shall be unlawful for any person to hereafter operate any cabaret, club cabaret, Group "D" Cabaret, or limited cabaret in the city without having first obtained proper license therefore from the Bureau of Licenses and Permits. No license shall be issued until the applicant shall have complied with the requirements of the Official Zoning Ordinance, the provisions of this article and other applicable ordinances of the City of Detroit . . . .

Ordinance No. 742–G includes Group "D" Cabarets among the uses specially regulated and prohibits the location of a Group "D" Cabaret within 1000 feet of two other regulated uses:

66.0000 Regulated Uses

In the development and execution of this Ordinance, it is recognized that there are some uses which, because of their very nature, are recognized as having serious objectionable operational characteristics, particularly when several of them are concentrated under certain circumstances thereby having a deleterious effect upon the adjacent areas. Special regulation of these uses is necessary to insure that these adverse effects will not contribute to the blighting or downgrading of the surrounding neighborhood. These special regulations are itemized in this section. The primary control or regulation is for the purpose of preventing a concentration of these uses in any one area (i. e. not more than two such uses within one thousand feet of each other which would create such adverse effects). Uses subject to these controls are as follows:

Adult

Adult Book Store
Adult Motion Picture Theater
Adult Mini Motion Picture Theater
Cabaret
Group 'D' Cabaret
Establishment for the sale of beer or intoxicating liquor for consumption on the premises.
Hotels or motels
Pawnshops
Pool or billiard halls
Public lodging houses
Secondhand stores
Shoeshine parlors
Taxi dance halls

4. The District Court initially made these findings in its order denying a preliminary injunction. The City Plan Commission may waive enforcement of the zoning restrictions against concentration of regulated uses:

Section 66.0101.

The Commission may waive this locational provision for Adult Book Stores, Adult Motion Picture Theatres, Adult Mini Motion Picture Theaters, Group "D" Cabarets, hotels or motels, pawnshops, pool or billiard halls, public lodging houses, secondhand stores, shoeshine parlors, or taxi dance halls if the following findings are made:
a) That the proposed use will not be contrary to the public interest or injurious to nearby properties, and that the spirit and intent of this Ordinance will be observed.
b) That the proposed use will not enlarge or encourage the development of a "skid row" area.
c) That the establishment of an additional regulated use in the area will not be contrary to any program of neighborhood conservation nor will it interfere with any program of urban renewal.
d) That all applicable regulations of this Ordinance will be observed.

Appellees responded to the complaint by moving that the case be dismissed for failure to state a claim, Fed.R.Civ.P. 12(b)(6), or, in the alternative, that summary judgment be granted. Fed.R.Civ.P. 56. The District Judge, pursuant to Rule 12(b)[5] treated the motion as one for summary judgment and considered the materials attached to Appellees' motion in making his ruling. See generally 6 J. Moore FEDERAL PRACTICE ¶ 56.08 at 2104 (2d ed. 1975) (hereinafter Moore). Appellant chose to rely on his pleadings and did not submit any additional material to the Court. The District Judge found the ordinance constitutional on their face relying on the reasoning of Nortown Theatre, Inc. v. Gribbs, 373 F.Supp. 363 (E.D.Mich.1974), a case which has since been reversed on appeal under the name American Mini Theatres, Inc. v. Gribbs, 518 F.2d 1014 (6th Cir.), cert. granted 423 U.S. 911, 96 S.Ct. 214, 46 L.Ed.2d 139 (1975). Appellant contends that the reversal of the District Court opinion in American Mini Theatres compels the same result in this case. He also charges that the Court below in granting Appellees' motion for summary judgment failed to adequately consider his claim that the ordinances were unconstitutional as applied to him.

Summary judgment is a useful procedure for reaching the merits of a case short of conducting a full-blown trial. See generally 6 Moore ¶ 56.15. Summary judgment is only appropriate where documents tendered to the Court disclose that no genuine issue of material fact remains to be decided.[6] See United States v. Diapulse, 527 F.2d 1008, at 1011 (6th Cir. 1976). See also 6 Moore ¶ 56.04[1] at 2060. A District Judge may grant summary judgment only where the prevailing party has demonstrated as a matter of law that he is entitled to judgment on the merits. See Fed.R.Civ.P. 56(c). See also Kennedy v. Silas Mason Co., 334 U.S. 249, 252 n. 4, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948). A court may not resolve disputed issues of fact in ruling on a summary judgment motion. See United States v. Diapulse, supra at 1011. If a question of fact remains, the motion for summary judgment should be denied and the case should proceed to trial. See Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962). Since resolution of Appellant's challenge to the facial validity of the ordinances raised purely legal questions and did not involve disputed issues of fact, the District Court properly concluded that the issue was ripe for summary judgment.

In ruling on the facial validity of the ordinance the District Judge adopted the legal analysis of Nortown Theatre, Inc. v. Gribbs, supra.[7] However, in American Mini challenges to the facial validity of the Detroit ordinances regulating the location of adult bookstores, adult motion picture theaters and adult mini motion picture theaters. The opinion was jointly authored by Judges Kennedy and Gubow of the Eastern District of Michigan who had consolidated the cases for purposes of ruling on motions for summary judgment. Although they acknowledged that the ordinances created classifications of businesses which restrain conduct protected by the First Amendment, the District Judges upheld the facial validity of the ordinances and found that they were enacted to further the compelling governmental interest of preserving the residential quality of neighborhoods from the deleterious impact of a concentration of adult entertainment business. The District Court voided another Detroit zoning restriction which prohibited location of a regulated use within 500 feet of a single dwelling or rooming unit. The Court held that this provision imposed a greater incidental restriction on First Amendment free-

5. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b).

6. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

7. In Nortown the District Court granted summary judgment for Defendants in a number of civil actions presenting substantially identical

*Theatres v. Gribbs, supra,* a divided panel of this Court rejected the legal conclusions reached by the District Court and held that the Detroit ordinances regulating the location of adult theaters and adult book stores violated equal protection in that they created classifications which unduly infringed on protected First Amendment rights. The majority concluded that the ordinances in question classified businesses according to the character of the materials purveyed to the public and accordingly " 'slip[ped] from the neutrality of time, place and circumstances into a concern about content,' " 518 F.2d at 1020, *quoting Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 99, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). If the District Court was correct that the disposition of this case should be controlled by resolution of the earlier cases, we would be compelled to reverse in light of *American Mini Theatres.*

However, there is a critical distinction between this case and *American Mini Theatres.* This case does not concern the regulation of book stores or theaters but restrictions imposed on the location of cabarets, establishments licensed to dispense liquor.[8] This crucial difference interjects an additional element into the case—the power of the states under the Twenty-first Amendment to regulate the sale of alcohol. In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), Justice Rehnquist writing for a majority of the Court, reversed a decision of a three-judge court and upheld the constitutionality of a regulation of the California Department of Alcoholic Beverage Control which prohibited explicitly sexual live entertainment and films in bars and other establishments licensed to dispense liquor by the drink. Justice Rehnquist noted that the regulation was promulgated "not in the context of censoring a dramatic performance in a theater, but rather in a context of licensing bars and night clubs to sell liquor by the

drink." 409 U.S. at 114, 93 S.Ct. at 395. He conceded that the Twenty-first Amendment does not supersede all other constitutional provisions in the area of liquor regulations, *see e. g., Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), but stated that state regulations in the area of the Twenty-first Amendment are entitled to an enhanced presumption of validity. 409 U.S. at 115, 93 S.Ct. 390.

Although the Court admitted that the California regulations on their face infringed on protected expression, the majority made it clear that traditional First Amendment standards are not appropriate guidelines for the exercise of state regulatory authority under the Twenty-first Amendment:

> We do not disagree with the District Court's determination that these regulations on their face would proscribe some forms of visual presentation that would not be found obscene under *Roth* and subsequent decisions of this Court. See, *e. g., Sunshine Book Co. v. Summerfield,* 355 U.S. 372, [78 S.Ct. 365, 2 L.Ed.2d 352] (1958), rev'g *per curiam,* 101 U.S.App. D.C. 358, 249 F.2d 114 (1957). But we do not believe that the state regulatory authority in this case was limited to either dealing with the problem it confronted within the limits of our decisions as to obscenity, or in accordance with the limits prescribed for dealing with some forms of communicative conduct in *O'Brien, supra.* [*United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672].

409 U.S. at 116, 93 S.Ct. at 396. The *Larue* majority went on to apply a rational basis test to the state regulations and found that "[t]he Department's conclusion, embodied in these regulations, that certain sexual performances and the dispensation of liquor by the drink ought not to occur at premises that have licenses was not an irrational

---

doms than was essential to preserve and stabilize residential neighborhoods.

**8.** Ordinance No. 744–G defines a "cabaret" as:
Any place wherein food and any type of alcoholic beverage is sold or given away on

the premises and the operator thereof holds a yearly license from the state to sell such beverages by the glass and where the patrons are provided with entertainment or space for dancing.

one." 409 U.S. at 118, 93 S.Ct. at 397. The Court stressed that the regulations, while facially overbroad, were not directed at the speech element of the entertainment but at the conduct of the entertainers and audience.[9] *Id.* at 117–18, 93 S.Ct. 390. Noting that the Twenty-first Amendment affords a state "wide latitude as to choice of means to accomplish a permissible end," the Court concluded that the state agency was within its power in establishing a broad prophylactic rule which prohibited "lewd" entertainment on licensed premises, even though some entertainment which might be termed "lewd" is actually protected speech and could not constitutionally be proscribed in specific instances. *Id.* at 116, 93 S.Ct. 390. *Cf. id.* at 119 n. 5, 93 S.Ct. 390. The Supreme Court also regarded as "critical" the fact that the state had not forbidden these performances "across the board" but only at establishments licensed to sell liquor by the drink. *Id.* at 118, 93 S.Ct. 390.

██ In *California v. Larue* the Supreme Court recognized that the broad power of the states to regulate the sale of liquor may outweigh any First Amendment interest in nude dancing. A state may promulgate broad prophylactic rules banning sexually explicit entertainment at licensed bars and cabarets so long as the regulations represent a reasonable exercise of a state's Twenty-first Amendment authority and are rationally related to the furtherance of legitimate state interests. However, if the state's authority to control liquor traffic is not implicated in a regulatory plan which impinges on free expression, the regulation must withstand stricter scrutiny.[10] *See Doran v. Salem Inn, Inc.,* 422 U.S. 922, 932–933, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

██ We find that the Detroit ordinance establishing licensing requirements for Group "D" Cabarets was enacted by authority of the Twenty-first Amendment and so the relaxed standard of review in *California v. Larue* is applicable. *Accord, Paladino v. Omaha,* 471 F.2d 812, 814 (8th Cir. 1972). Although Michigan has a liquor control commission which is ultimately responsible for the regulation of liquor traffic in the state, its jurisdiction is not exclusive. The Michigan Supreme Court has sanctioned the enactment of municipal ordinances regulating local traffic in liquor.[11] *See e.g., Mutchall v. Kalamazoo,* 323 Mich. 215, 35 N.W.2d

---

9. "The substance of the regulations struck down prohibits licensed bars or nightclubs from displaying, either in the form of movies or live entertainment, "performances" that partake more of gross sexuality than of communication. While we agree that at least some of the performances to which these regulations address themselves are within the limits of the constitutional protection of freedom of expression, the critical fact is that California has not forbidden these performances across the board. It has merely proscribed such performances in establishments that it licenses to sell liquor by the drink.

Viewed in this light, we conceive the State's authority in this area to be somewhat broader than did the District Court. This is not to say that all such conduct and performance are without the protection of the First and Fourteenth Amendments. But we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater."

409 U.S. at 118, 93 S.Ct. at 397.

10. Thus both the District Court in *Nortown Theatre, Inc. v. Gribbs, supra* at 369, and the majority and dissenting opinions in *American Mini Theatres v. Gribbs, supra* at 1019, 1023, applied a standard of strict scrutiny to ordinances regulating the location of adult book stores and adult theaters.

11. In *Tally v. City of Detroit,* 54 Mich.App.328, 220 N.W.2d 778 (Ct.App.1974), *aff'd on rehearing* 58 Mich.App. 261, 227 N.W.2d 214 (Ct.App. 1975), the Michigan Court of Appeals affirmed the facial validity of Detroit Ordinance No. 744–G in the face of a First Amendment challenge to the licensing requirements for Group "D" Cabarets. Relying on *California v. Larue,* the Michigan Court found that the City derived its power of home rule from the state and that the ordinance in question was a reasonable exercise of Detroit's Twenty-first Amendment authority to regulate local liquor traffic. *Id.,* 220 N.W.2d at 783. *See also Crownover v. Musick,* 9 Cal.3d 405, 107 Cal.Rptr. 681, 509 P.2d 497 (1974); *Manos v. City of Green Bay,* 372 F.Supp. 40 (E.D.Wis.1974).

245, 248–49 (1948). The zoning restrictions on Group "D" Cabarets have been incorporated by reference into the requirements for a cabaret license.[12] If the provisions restricting the location of Group 'D' Cabarets bear a reasonable relation to legitimate municipal interests, the facial validity of the ordinances must be upheld.

The ordinances in question were enacted to combat a growing urban crisis—the decay of residential neighborhoods into crime-infested "no-man's lands" where neighborhood taverns have been transformed into topless bars and apartments have deteriorated into flophouses. The Detroit Common Council, alarmed by the proliferation of businesses which attract the lowest stratum of society and the concomitant decline in the residential quality of inner city neighborhoods, enacted the challenged ordinances to control in the future the location of establishments offering adult entertainment.[13] The Detroit plan was to deconcentrate the locations of cabarets offering sexually explicit entertainment and thereby diffuse the harmful impact a cluster of these establishments would have on the character of a residential neighborhood. To this end the Council enacted the prohibition against location of a Group "D" Cabaret within 1000 feet of two other regulated uses.[14]

Attached to Appellee's motion for summary judgment were numerous affidavits from urban planners, experts on real estate values, businessmen, reporters and ordinary citizens who attested to the deleterious consequences which a high concentration of businesses offering adult entertainment could have on the character of urban neighborhoods. Appellant chose not to submit counter-affidavits. On the face of the record, we cannot conclude that the challenged ordinances regulating the location of Group "D" Cabarets are irrational or that they are not reasonably related to valid municipal interests. The restrictions are not imposed on adult entertainment *per se* but on the physical location of cabarets which feature adult entertainment. In this sense, the ordinances seek to regulate "conduct" and not "expression."[15] *See California v. Larue, supra,* 409 U.S. at 117–18, 93 S.Ct. 390. In light of *California v. Larue,* we must conclude that the restrictions are constitutional on their face and represent an appropriate exercise of the city's Twenty-first Amendment authority to regulate the location of establishments licensed to sell liquor within municipal boundaries. In fact, the Detroit ordinances are less restrictive than the regulation upheld by the Supreme Court in *Larue.* The California rule banned nude dancing at *all* locations licensed to distribute liquor by the drink

---

**12.** *See* note 3 *supra.*

**13.** The zoning restrictions do not extend to non-conforming uses established prior to enactment of the ordinances.

**14.** See Ordinance No. 742–G § 66.0000. The Council also inserted section 66.0103 which prohibited the location of a Group "D" Cabaret within 500 feet of a single dwelling or rooming unit. This section was declared unconstitutional by the District Court in *Nortown Theatre Inc. v. Gribbs, supra* at 369–70, but has since been amended.

**15.** The motives of the Common Council in enacting the ordinances in question are largely irrelevant to our inquiry. Although we are bound by Council's statement of the legislative purpose for the acts, only the effect of the legislation is relevant to the question of its constitutionality and not the motives underlying its enactment. See *American Mini Theatres, Inc. v. Gribbs, supra* at 1019. As the

Supreme Court stated in *United States v. O'Brien,* 391 U.S. 367, 383, 88 S.Ct. 1673, 1682, 20 L.Ed.2d 672 (1968):

It is a familiar principle of constitutional law that this Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive. As the Court long ago stated:

"The decisions of this court from the beginning lend no support whatever to the assumption that the judiciary may restrain the exercise of lawful power on the assumption that a wrongful purpose or motive has caused the power to be exerted." *McCray v. United States,* 195 U.S. 27, 56 [24 S.Ct. 769, 776, 49 L.Ed. 78] (1904).

This fundamental principle of constitutional adjudication was reaffirmed and the many cases were collected by Mr. Justice Brandeis for the Court in *Arizona v. California,* 283 U.S. 423, 455 [51 S.Ct. 522, 75 L.Ed. 1154] (1931).

whereas Detroit permits cabarets to offer adult entertainment so long as their licensees comply with the city zoning code. The District Court was correct in concluding that the ordinances restricting the location of Class "D" Cabarets are constitutional on their face.

Appellant also charged in his complaint that the special licensing and zoning provisions for Group "D" Cabarets, even though constitutional on their face, could not constitutionally be applied to him because the entertainment provided at the Club Zeus is protected by the First Amendment and enforcement of the ordinances in this instance would unduly infringe on his right to free expression. He argues that the District Judge granted Appellees' motion for summary judgment without adequate consideration of the constitutionality of the ordinances as applied. We agree.

■■■ An ordinance which is not overbroad on its face may nevertheless be unconstitutional as applied if it is enforced against a protected activity. *Cf. Grayned v. City of Rockford,* 408 U.S. 104, 106 n. 1, 114, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Justice Rehnquist carefully restricted his remarks in *California v. Larue* to the facial validity of regulations enacted under the Twenty-first Amendment. *See* 409 U.S. at 119 n. 5, 93 S.Ct. 390. He admitted that the Twenty-first Amendment does not supersede other constitutional provisions in the area of liquor regulation, 409 U.S. at 115, 93

S.Ct. 390, and, while upholding the validity of the California liquor regulation on its face, he recognized the possibility " 'that specific future applications of [the statute] may engender concrete problems of constitutional dimension. . . .' " 409 U.S. at 119 n. 5, 93 S.Ct. at 397, *quoting Seagram & Sons v. Hostetter,* 384 U.S. 35, 52, 86 S.Ct. 1254, 16 L.Ed.2d 336 (1966). Thus *California v. Larue* does not foreclose the argument that an otherwise valid ordinance under the Twenty-first Amendment may be applied in such a way as to infringe on rights protected by the First Amendment.[16] *See also California v. Larue, supra* at 120 n. 1, 93 S.Ct. 390 (Stewart, J., concurring).

■■■ Appellees argue that Appellant's failure to come forward with additional facts to support the allegations in the complaint should foreclose his right to contest the grant of summary judgment. They contend that the burden was on Appellant to come forward and respond to the affidavits they submitted and that he should not have relied solely on his pleadings to survive summary judgment. This argument, however, is misconceived because it reverses the proper burden of proof on a motion for summary judgment. Under Rule 56(c) the moving party always has the initial burden of showing the absence of a genuine issue of material fact and that he is entitled to judgment as a matter of law. *See Adickes v. Kress & Co.,* 398 U.S. 144, 159–60, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). *See generally* 6 Moore ¶ 56.15[3]. When the initial

---

**16.** Justice Douglas in his dissenting opinion in *Larue* offered a classic example of a case where a facially valid licensing provision under the Twenty-first Amendment may be unconstitutionally applied to an activity protected by the First Amendment:

> It is conceivable that a licensee might produce in a garden served by him a play— Shakespearean perhaps of one in a more modern setting—in which for example, "fondling" in the sense of the rules appears. I cannot imagine that any such performance could constitutionally be punished or restrained, even though the police power of a State is now buttressed by the Twenty-first Amendment. For, as stated by the Court, that Amendment did not supersede all other constitutional provisions "in the area of liquor regulations." Certainly a play which

passes muster under the First Amendment is not made illegal because it is performed in a beer garden.

409 U.S. at 121, 93 S.Ct. at 398 (footnote omitted). On their face, the Detroit ordinances regulating Group "D" Cabarets could be applied to dinner theaters licensed to dispense liquor by the drink which present performances of "Twelfth Night" or "As You Like It", two Shakespearean comedies which feature sexual impersonation, or more modern plays which contain overt sexuality, but which are nevertheless protected by the First Amendment. Conceivably, enforcement of the ordinances in these instances could present "concrete problems of constitutional dimension" which Justice Rehnquist alluded to in *Larue.* 409 U.S. at 119 n. 5, 93 S.Ct. 390.

burden has been supported by additional materials, the non-moving party must then come forward with specific facts which demonstrate to the court that there is a genuine issue for trial.[17] However, the fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted—the ultimate burden of proving the propriety of summary judgment remains on the moving party.[18] See Adickes v. Kress & Co., supra at 159–60, 90 S.Ct. 1598; Fitzke v. Shappell, 408 F.2d 1072 (6th Cir. 1972). As the Supreme Court observed in Adickes v. Kress & Co., the Advisory Committee on the 1963 Amendments to Rule 56 expressly rejected the idea that subdivision (e) altered the ordinary standards of proof in a motion for summary judgment:

'[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied *even if no opposing evidentiary matter is presented.*'

398 U.S. at 160, 90 S.Ct. at 1610 (emphasis in original), quoting Advisory Committee Notes on 1963 Amendment to Rule 56.

Appellees failed to meet their initial burden on the issue of the constitutionality of the ordinances as applied. The affidavits attached to the motion for summary judgment were exclusively addressed to the issue of the facial validity of the ordinances. No attempt was made to dispute Appellant's contention that the entertainment provided at Club Zeus was protected speech and that enforcement of the ordinances against him would unduly infringe on his constitutional rights. No

facts were presented either by affidavit, stipulation or otherwise as to the exact nature of the entertainment provided at the cabaret. Appellant's admission that the entertainment involved topless dancing does not, by itself, remove the case from the ambit of the First Amendment since even nude dancing may, under some circumstances, be entitled to constitutional protection. See Doran v. Salem Inn, Inc., supra, 422 U.S., at 932, 95 S.Ct. 2561; California v. Larue, supra, 409 U.S. at 118, 93 S.Ct. 390. See also Salem Inn, Inc. v. Frank, 501 F.2d 18, 21 n. 3 (2d Cir. 1974), aff'd in part, rev'd in part sub nom. Doran v. Salem Inn, Inc., supra.

As we have stated on many occasions, without an adequate factual basis in the record, a District Court should be extremely hesitant to grant summary judgment on important and complex issues. See e. g., Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193, 1196 (6th Cir. 1974). See generally 6 Moore ¶ 1.06 at 2305. The adequacy of the record is particularly important where the court is called on to decide questions of constitutional law without benefit of a trial. See 6 (part 2) Moore ¶ 56[10] at 56–772–77. Appellant should have been given the opportunity to prove his allegation that enforcement of the special provisions relating to Group "D" Cabarets in this instance would unduly infringe on protected speech. Without reliable evidence on the record as to the exact nature of the entertainment offered by Appellant, the District Court could not have adjudicated Appellant's claim that the ordinances were unconstitutional as applied. A court should

17. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Fed.R.Civ.P. 56(e).

18. While there is an element of risk to the non-moving party when he fails to respond to the materials attached to a motion for summa-

ry judgment, the primary burden remains on the moving party to prove his right of judgment:

It has always been perilous for the opposing party neither to proffer any countering evidentiary materials nor file a 56(f) affidavit. And the peril rightly continues. Yet the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required. 6 Moore ¶ 56.-22[2] at 2824–25.

be particularly vigilant in the protection of an individual's right to free expression where a municipality seeks to enforce ordinances which admittedly reach protected activities on their face.

We find that the Detroit ordinances regulating the location of Group "D" Cabarets are constitutional on their face and summary judgment as to this issue was appropriate. The ordinances were enacted pursuant to authority granted by the Twenty-first Amendment and are rationally related to the legitimate municipal interest of preserving the residential character of urban neighborhoods. Summary judgment should not have been granted, however, on the issue of the constitutionality of the ordinances as applied in this case because the record was inadequate to determine whether the activities engaged in by Appellant were protected by the First Amendment and whether enforcement of the ordinances would unduly infringe on the enjoyment of Appellant's right to free expression.

Affirmed in part, reversed in part and remanded.

McCREE, Circuit Judge (dissenting).

I respectfully dissent from the majority's decision holding the challenged ordinance to be facially constitutional under the Twenty-first Amendment.

In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), the Supreme Court considered regulations issued by the California Department of Alcoholic Beverage Control that prohibited performances by male or female entertainers that partook "more of gross sexuality than of communication." 409 U.S. at 109, 93 S.Ct. at 391. The portions of the regulations held facially constitutional by the Supreme Court prohibited the following kinds of conduct on licensed premises:

(a) The performance of acts, or simulated acts, of "sexual intercourse, masturbation, sodomy, bestiality, oral copulation, flagellation or any sexual acts which are prohibited by law";

(b) The actual or simulated "touching, caressing or fondling on the breast, buttocks, anus or genitals";

(c) The actual or simulated "displaying of the pubic hair, anus, vulva or genitals";

(d) The permitting by a licensee of "any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus"; and, by a companion section,

(e) The displaying of films or pictures depicting acts a live performance of which was prohibited by the regulations quoted above. Rules 143.3 and 143.4, 409 U.S. at 111–12, 93 S.Ct. at 394.

The ordinance in the case before us affects bars or other liquor controlled businesses that feature "topless dancers, go-go dancers, exotic dancers, strippers, male or female impersonators, or similar entertainers." Detroit Michigan Ordinance No. 744–G § 5–4–1, October 26, 1972.

*LaRue* holds that a regulation that prohibits specific kinds of explicit sexual conduct on premises where liquor is served will not be held facially unconstitutional merely because some of the conduct that it comprehends is protected by the First Amendment. In this appeal, however, the ordinance limits the bar owner's presentation of certain categories of entertainers whose conduct may or may not involve gross sexuality more than communication in the medium of entertainment.

Another and perhaps more important distinction exists between the Detroit ordinance and the California regulations considered in *LaRue*. The Detroit ordinance appears to be more concerned with regulating land use than it is with regulating the delivery and use of liquor under the Twenty-first Amendment. This is evident from the fact that the Detroit ordinance does not forbid a licensed bar from presenting the proscribed entertainers if 51% of the neighbors living or doing business within 500 feet of the proposed location approved or if there are fewer than two other uses regulated by the ordinance within 1,000 feet of the proposed location. On the other hand,

the California regulations forbade the proscribed conduct at all business places, without exception, where liquor was dispensed.

I do not read *LaRue* as giving blanket authority to states to regulate under the Twenty-first Amendment every kind of conduct by performers in bars. When a state seeks to control barroom performances that partake "more of gross sexuality than of communication," the Twenty-first Amendment will insulate from a charge of facial unconstitutionality regulations that prohibit acts of gross sexuality on regulated premises. The Twenty-first Amendment does not, however, authorize ordinances like the one attacked here.

In *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Supreme Court indicated that statutes designed to regulate obscenity must be carefully drawn. Indeed, the sexual conduct sought to be regulated or proscribed "must be specifically defined by applicable state law, as written or authoritatively construed." 413 U.S. at 24, 93 S.Ct. at 2611. As examples of what a state statute could define for regulation, the Court suggested:

 (a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

 (b) Patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals. 413 U.S. at 25, 93 S.Ct. at 2615.

The drafters of the regulations in *LaRue* appear to have been influenced by the Court's suggestions in *Miller,* because they tried to regulate conduct consistent with the *Miller* formula. Although the regulation exceeded the boundaries set down in *Miller,* the Supreme Court held that the slight variance was not fatal because of the state's authority to regulate dispensation of liquor.

In this appeal, however, the City of Detroit failed to surmount the first hurdle in attempting to regulate sexual conduct. It failed to "specifically define" the kind of sexual conduct that was subject to regulation. Topless dancers, go-go dancers, strippers, exotic dancers and impersonators are not, without more, obscene. Although it is possible one or more of these performers might engage in obscene conduct, the ordinance is not restricted to such entertainment, nor does it afford definite standards of obscenity. The Michigan courts do not appear to have "authoritatively construed" the challenged ordinance so that it is limited to particular obscene conduct. *Cf. Talley v. Detroit,* 54 Mich.App. 328, 220 N.W.2d 778 (1974), *on rehearing,* 58 Mich.App. 261, 227 N.W.2d 214 (1975).

Accordingly, I view this ordinance as being grossly facially overbroad because it attempts to regulate all forms of expression by listed entertainers. I do not read *LaRue* as permitting this court to uphold such an ordinance in the face of such substantial overbreadth.