**Dewey Scott FRAZIER, Plaintiff,**

**v.**

**Ed WILSON, etc., Defendant.**

**No. CIV–2–77–81.**

United States District Court,
E. D. Tennessee,
Northeastern Division.

July 28, 1977.
On the Merits Aug. 23, 1977.

Dewey Scott Frazier, pro se.

Richard W. Pectol, Johnson City, Tenn., for defendant.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

This is an action for compensatory and punitive damages by a former prisoner in the Washington County, Tennessee jail for the deprivation under color of Tennessee law by the superintendent of that institution of the plaintiff's federally-protected civil rights. 42 U.S.C. § 1983. This Court has jurisdiction of such claims under the provisions of 28 U.S.C. § 1343(4). The defendant moved in his answer for a dismissal of the action on the ground that Mr. Frazier's claim is " * * * totally frivolous. * * * "

There is no merit to that motion. Mr. Frazier claims that the defendant Mr. Wilson deprived him of his guarantee against cruel and unusual punishment, Constitution, Eighth Amendment. Whether depriving a prisoner of medicine when he claims he needs it and and of drinking-water for a period of six hours * may be said to constitute cruel and unusual punishment is problematical, but see *Newman v. State of Alabama*, D.C.Ala. (1972), 349 F.Supp. 278, 286[6], as prison authorities have wide discretion in treating prisoners. *Riley v. Rhay*, C.A.9th (1969), 407 F.2d 496, 497[1].

However, their failure or refusal to provide medical treatment may, in the case of a serious medical problem, violate the Constitution, Fourteenth Amendment, Due Process Clause. *Tolbert v. Eyman*, C.A.9th (1970), 434 F.2d 625, 626[1]. Thus, the refusal of the defendant to allow the plaintiff authorized medicine that he needed to prevent serious harm to his health, as claimed by the plaintiff, states " * * * a perfectly viable claim * * * " against the defendant. *Ibid.*, 434 F.2d at 626[2]

The defendant moved for a summary judgment. Rule 56(b), Federal Rules of Civil Procedure. In support of such motion, the defendant submitted his affidavit and certain medical disbursement records of the Washington County, Tennessee jail. Such records show that from May 14, 1977 through May 20, 1977, inclusive, Mr. Frazier was provided with certain medication on a daily basis. However, the thrust of one of the plaintiff's claims herein is that the defendant jailer denied him medicine " * * * when he asked for it, and was in need of it. * * * " At this stage of the proceeding, this Court cannot conclude that such daily medication precluded Mr. Frazier from being deprived of due process of law by the denial of adequate medical attention as it is alleged herein. " * * * [I]n some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all. * * * " *Westlake v. Lucas*, C.A.6th (1976), 537 F.2d 857, 860–861, n. 5. It remains for decision whether the defendant's " * * * allege[d] acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs. * * * " *Estelle v. Gamble* (1976), 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 261[10].

Furthermore, the defendant's motion fails to address itself to the plaintiff's contentions that he was denied drinking

---

* Mr. Frazier contends he was segregated into solitary confinement in "a 12-man cell" for a period of eight days. The defendant admitted that " * * * prisoners are separated. * * * " Unless there were minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for separating pris-

oners " * * * on the nature of their conviction[s] and duration[s] of their sentence[s], * * * " as asserted by the defendant, there may have been a further due process violation alleged. *Wolff v. McDonnell* (1974), 418 U.S. 539, 571, 94 S.Ct. 2963, 2982, 41 L.Ed.2d 935, 960, n. 19[28].

water for a period of 6 hours and that he was placed in solitary confinement. " * * * [A] case heard in the federal courts should be determined upon the merits and after an adequate development of the facts. * * * " *Oil Chemical & Atom. Wkrs. Union v. Delta Refin. Co.,* C.A.6th (1960), 277 F.2d 694, 698[4]. Although lawsuits " * * * 'often prove to have been groundless * * * no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact.' * * * " *Idem.,* quoting from *Myers v. Bethlehem Shipbldg. Corp.* (1938), 303 U.S. 41, 51–52, 58 S.Ct. 459, 463–464, 82 L.Ed. 638, 645.

■ It thus appearing that genuine issues of material fact are extant between the parties herein, the defendant's motion for a summary judgment hereby is OVER-RULED. *Felix v. Young,* C.A.6th (1976), 536 F.2d 1126, 1130[1, 2]; *Tee-Pak, Inc. v. St. Regis Paper Company,* C.A.6th (1974), 491 F.2d 1193, 1195[1].

The Court, in its discretion, will proceed to trial herein without a pretrial conference. Rule 16, Federal Rules of Civil Procedure. This action hereby is ASSIGNED for trial without a jury to commence Tuesday, August 2, 1977 at nine o'clock in the forenoon. The clerk will issue timely a writ of habeas corpus ad testificandum to the warden, Brushy Mountain penitentiary, Petros, Tennessee, to assure Mr. Frazier's presence and testimony at such trial. *United States v. McGaha,* D.C.Tenn. (1962), 205 F.Supp. 949, 951[1], [2], [3], [4]. The officers of this Court shall issue and serve a subpoena upon Mr. R. G. Keplinger, deputy sheriff of Washington County, Tennessee, to appear and testify as a witness for the plaintiff and shall perform all duties in connection therewith. 28 U.S.C. § 1915(c).

## MEMORANDUM OPINION
## ON THE MERITS

This is an action for compensatory and punitive damages by Mr. Dewey Scott Frazier, a United States citizen and former inmate of the Washington County, Tennessee jail, who claims that the defendant Mr. Ed Wilson, superintendent of that institution, deprived him under color of Tennessee law of his federally-protected guarantee against cruel and unusual punishment, Constitution, Eighth Amendment, and his right to due process of law, Constitution, Fourteenth Amendment. 42 U.S.C. § 1983. The Court's jurisdiction was invoked properly under the provisions of 28 U.S.C. § 1343(3). A bench trial was conducted by this Court on August 19, 1977.

The purports of Mr. Frazier's claims are that Mr. Wilson deprived him of medicine he needed during a period of nine days (or parts of two of those days) the plaintiff was in his custody; that Mr. Wilson deprived him of drinking water for a period of approximately 6 hours on one of those days; and that for most of the same period, Mr. Wilson held him in solitary confinement. Mr. Frazier, appearing *in propria persona,* presented his evidence without testifying personally.

Mr. Frazier was received lawfully in the aforenamed jail from a Tennessee penitentiary in the afternoon of May 12, 1977 [1] and was placed with other prisoners in the "right top" cell. On the following day (the 13th), Mr. Wilson was informed by a trusty that, if an unnamed person failed to slip hacksaw blades to Mr. Frazier, he could expect trouble when he arrived at the penitentiary where Mr. Frazier would be incarcerated afterward.

Alerted by the possibilities that Mr. Frazier, who had a reputation with former prison custodians as providing a constant threat of escaping custody, might have received some means to effect his departure informally, Mr. Wilson transferred [2] Mr. Frazier on the 13th into the "drunk-tank" cell, which was occupied at the time by another inmate, Mr. Bobo. Mr. Bobo recit-

---

1. All subsequent dates herein were in May, 1977.

2. It was Mr. Wilson's policy to segregate high-risk prisoners from those not deemed to be in that category.

ed to Mr. Wilson reasons that he preferred not to share a cell alone at that time with Mr. Frazier, and as a result, after about 10 minutes, the plaintiff was re-transferred to the so-called "left max." cell.

The following day, the 14th, Ms. Judy Frazier, the sometime wife of the plaintiff, applied at about noon to a deputy sheriff for permission to visit her husband. She was denied this permission, because Mr. Frazier's mother and his friend, a Mr. Calhoun, had visited the plaintiff earlier that day. While Mr. Frazier was in the visiting-room with these earlier callers, a part-time jailer of the institution discovered in the hallway about 6 feet from the door to such visiting-room, a quantity of hacksaw and other bladed instruments.

When this information became known to Mr. Wilson, he re-retransferred Mr. Frazier on the 16th to the "right max." cell, contiguous to the "left max." cell. As he was being ushered into this latest place of incarceration, Mr. Frazier advised Mr. Wilson that he was weary with being moved-around, and that he was " * * * going to plug-up the commode [in the cell into which he was being moved] and flood this damned place. * * * " Whereupon, Mr. Wilson directed that the water-supply to such commode be turned-off.

The "turn-off" assignment was entrusted to Mr. Edward Sluder, a "trusty" inmate. Mr. Sluder operated the wrong valve, resulting· in the water-supply to the water basin (the usual source of drinking water) in the cell's being turned-off. The water-supply to the shower-bath therein remained "on", but no one advised Mr. Frazier that water for him to drink remained available from this source. This erroneous interruption of the water supply to the cell which Mr. Frazier was occupying alone occurred sometime after 3:00 or 3:30 o'clock, p. m.; the error was not discovered and corrected until soon before 10:00 o'clock that evening.

Mr. Wayne Laws, the acting jailer in the institution, was in contact with Mr. Frazier during this waterless period and received no request from this prisoner for water to drink. Mr. R. G. Keplinger, a relief jailer,

was on duty also during this period and received no such request from Mr. Frazier, although Mr. Keplinger recalled no contact with Mr. Frazier within that period.

Mr. Frazier was transferred again after the foregoing experience on the 17th, this time to the "holding cell". Mr. Frazier advised Mr. Wilson on the 19th that he (the plaintiff) had no desire to escape jail on this occasion, although he expressed confidence that he could accomplish that any time he so desired, and that a file was already available for that purpose in the "right max." cell. Mr. Wilson inspired a search of that cell without the file's being discovered.

As Mr. Frazier was departing the institution finally on the following 20th, he again warned Mr. Wilson of the presence of this escape-instrument therein; and, when Mr. Wilson confessed it had not been located therein, Mr. Frazier offered " * * * to bet [Mr. Wilson] a dollar * * * " he (the plaintiff) could produce it. Mr. Wilson responded that it " * * * would be worth a dollar to me to find it, * * * " gave Mr. Frazier a dollar, and the file was then located, within the cell in which Mr. Frazier advised it was situated, and was confiscated.

Mr. Frazier brought with him from the penitentiary to the jail a quantity of no. 10 Valium, a tranquilizer, which had been prescribed for his use. This prescription was refilled for him by order of the Washington County physician while he was in the local jail.

Mr. Frazier admitted the log, exhibited herein and reflecting that he had received every day he was in the defendant's custody the dosage thereof as prescribed, was correct except for the 19th. Mr. Laws saw Mr. Frazier daily and, at no time, received any complaint that the plaintiff was denied his medication as needed, although Mr. Laws confessed he " * * * was a little late * * * " on occasions in delivering the potion to Mr. Frazier. The unused portion of such refilled prescription was taken back to the penitentiary by Mr. Frazier on the 20th.

All of the cells Mr. Frazier occupied alone in this institution were well-lighted, had toilet and other water facilities, and were located where his banging upon the doors could be heard easily by prison authorities. The "left max." and "right max." cells where he was incarcerated were designed to accommodate 12 persons simultaneously.

Although, for obvious (and commendable) reasons of security, Mr. Frazier was confined solitarily during his stay in this jail, the Court FINDS that he was not subjected to the peculiarities of the system of "solitary confinement" forbidden by the proscription against added cruel and unusual punishment. This system involves the complete isolation of a prisoner from all human society, with his or her confinement in a cell so arranged that the prisoner has no direct intercourse or sight of any other human being and no employment or instruction. *Ex Parte Medley* (1890), 134 U.S. 160, 167, 10 S.Ct. 384, 386, 33 L.Ed. 835, 839 (headnote 4). There was no evidence presented by the plaintiff that he was placed alone in those several cells as added punishment for any violation of the rules and regulations of the jail involved; in fact, it is undisputed that, except for the flooding threat, he had violated no such rule or regulation, although credence had been added to his reputation as "an escape artist" while he was an inmate. Mr. Wilson and his associates did well to accord these possibilities greater attention thereafter.

The Court FINDS further, and Mr. Frazier appears to concede, that he failed to prove by the preponderance of the evidence that any omissions to get his tranquilizer to him seasonably on the part of Mr. Wilson or his agents were " * * * sufficiently harmful to evidence [the latter's] deliberate indifference to [Mr. Frazier's] serious medical needs * * * in violation of the Eighth Amendment. [Footnote reference omitted.] * * * " *Estelle v. Gamble* (1976), 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251, 256[10]. The Court also FINDS from the preponderance of the evidence that Mr. Wilson exercised a compelling state interest, centering about Mr. Frazier's threat to interfere substantially with the administration of the jail, in directing that the water-supply to the cell Mr. Frazier was then occupying be interrupted.

It is inferred reasonably that Mr. Frazier's accomplishment of his stated purpose to flood the jail, or a portion of it, would have wreaked damage on public property committed to the care of Mr. Wilson and would have posed a threat to the safety and well-being of other inmates under his care. It will be assumed *arguendo*, but not decided, that Mr. Frazier enjoyed some right under the federal Constitution not to be deprived of water to drink for a period of 6 hours.

But, as the Supreme Court reiterated so very recently, " * * * '[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations of our penal system.' * * * " *Jones v. North Carolina Prisoners' Union* (1977), 433 U.S. 119, 125, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629, 638. When Mr. Frazier declared his purpose to flood his quarters Mr. Wilson was justified amply in removing from the ambit of Mr. Frazier the means to carry his threat into fruition, even if it resulted in the temporary curtailment of some constitutional right Mr. Frazier may have had. Mr. Wilson then exercised a compelling state interest in preventing a substantial interference with the orderly administration of the jail under his supervision. *Cf. Fortune v. McGinnis*, D.C.N.Y. (1970), 319 F.Supp. 901, 904[4]. Any other ruling under those circumstances would border on the ridiculous.

It is the consequent decision of this Court that the plaintiff Mr. Dewey Scott Frazier hereby is DENIED all relief, and judgment will enter that he taken nothing from the defendant, Mr. Ed Wilson. Rule 58(1), Federal Rules of Civil Procedure. Subject to the provisions of 28 U.S.C. § 753(f),[3] should

3. " * * * Fees for transcripts furnished * * * to persons permitted to appeal in forma pauperis shall * * * be paid by the United States if the trial judge or a circuit judge [of the United States] certifies that the appeal is not frivolous (but presents a substantial question). * * * " 28 U.S.C. § 753(f).

the plaintiff give timely notice of an appeal from the judgment to be entered herein, he having been permitted to proceed herein in forma pauperis, may proceed on such appeal in forma pauperis. Rule 24(a), Federal Rules of Appellate Procedure.