**GENERAL DRIVERS, WAREHOUSEMEN & HELPERS, LOCAL UNION NO. 89, AFFILIATED WITH the INTERNATIONAL BROTHERHOOD of TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL–CIO, Plaintiff,**

v.

**PEYTON'S, A DIVISION OF the KROGER COMPANY, Defendant.**

**No. C89–0466–L(M).**

United States District Court, W.D. Kentucky, at Louisville.

Oct. 31, 1989.

Alton D. Priddy, Hardy, Logan, Priddy and Cotton, Louisville, Ky., for plaintiff.

C. Laurence Woods, III, Raymond C. Haley, III, Westfall Talbott & Woods, Louisville, Ky., for defendant.

## JUDGMENT

MEREDITH, Chief Judge.

The above matter having been referred to the United States Magistrate, and the Magistrate having filed his Findings of Fact, Conclusions of Law and Recommendations, and objections having been filed, and the Court having made a *de novo* determination of those portions of the Magistrate's proposed Findings of Fact, Conclusions of Law and Recommendations to which objections have been made,

The Court accepts the Findings of Fact, Conclusions of Law and Recommendations of the Magistrate, and

IT IS ORDERED AND ADJUDGED:

1) Summary Judgment be, and it is, hereby GRANTED for plaintiff;

2) The decision of the arbitrator be, and it is, hereby set aside; and

3) Defendant restore Ardeana Collard to the seniority list of the General Drivers, Warehousemen & Helpers, Local Union No. 89, Affiliated with the International Brotherhood of 'Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO.

This is a final Judgment, and there is no just cause for delay.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATIONS

Filed September 26, 1989

LONG, Chief United States Magistrate Judge.

### FINDINGS OF FACT

1) This matter is before the Magistrate pursuant to 28 U.S.C. Section 636(b)(1)(B) for Findings of Fact, Conclusions of Law and Recommendations.

2) Plaintiff has filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Defendant has responded, and a reply brief has been filed. Accordingly, the issues are ripe for adjudication.

3) Ardeane Collard, an employee with 14 years of seniority with the defendant, sustained an on-the-job injury to her back on June 5, 1987. She was kept off work by her physicians until October 5, 1987, when she was allowed to return to light duty work for one week. Ms. Collard returned to work without restrictions on December 8, 1987, but was unable to complete the shift, having reinjured herself. Ms. Collard has not been able to return to work since December 8, 1987.

4) It is uncontroverted that Ms. Collard was off work because of a work-related injury. It is also uncontroverted that Ms. Collard has not filed a Workmen's Compensation claim, has not accepted any settlement or award with regards to her potential claim, and has not engaged in any gainful employment following her injury.

5) On June 23, 1988, defendant severed Ms. Collard's employment on the basis that she was physically unable to perform her job.

6) Pursuant to the provisions of the collective bargaining contract between the

parties, a hearing was held on December 20, 1988, before Arbitrator Ludolf. On May 10, 1989, Arbitrator Ludoff issued an opinion denying Ms. Collard's grievance. This action was filed so as to attempt to set aside this decision.

7) The applicable contract provisions provide:

### Article 4. Management Rights

This section includes the right of management to "discharge or discipline for just cause" and "to transfer employees from one type of work to another." It concludes with the statement: "None of the foregoing Management Rights shall be exercised in violation of employee rights specifically set out elsewhere in this agreement."

### Article 5. Seniority

*Section 9.* An employee who is compelled to be off work due to illness or injury, verified in writing by a competent medical doctor, shall retain previously accumulated seniority and shall continue to accumulate seniority for the duration of such incapacitating illness or injury provided, however, in no event shall he retain previously accumulated seniority or accumulate seniority if (1) he accepts a final settlement or award under Workmen's Compensation law unless after receipt of such lump sum settlement or award, the employee is fully qualified and able to perform the full range of job duties assigned to him and is given clearance to return to work by a medical doctor of the Company's selection, or (2) engages in gainful employment during the term of such illness or injury or (3) when the duration of such illness or injury equals or exceeds his accumulated seniority prior to such illness or injury, whichever is less. The provision shall not be applicable to any employee benefits or emolument of employment except seniority only and shall not supersede the layoff provisions of this Article.

### Article 8. Leaves of Absence

*Section 5.* An employee who is required to be off work due to illness or injury verified in writing by a medical doctor shall be granted a leave of absence without pay by the Employer and the term of such leave shall not exceed (1) year and shall be renewable for additional periods up to one (1) year each.

The sick or injured employee shall retain and accumulate seniority during such leave of absence in accordance with Article 5, Section 9 of this Agreement. Such employee shall be required, as a condition of continuing such leave of absence up to one (1) year and on renewals, to submit to the Employer at least every four (4) months after leave begins the statement of a medical doctor verifying his inability to return to work because of the illness or injury for which leave was granted and, if required, shall submit to examination by a medical doctor designated by the Company and at the Company's expense.

### Article 30. Discharge, Suspension and Warning Notices

*Section 1.* The Employer shall not discharge or suspend any employee without just cause.

*Section 3.* "... Any claim that a warning or suspension or discharge was not for just cause may be processed as a grievance through the grievance procedure provided in this Agreement."

Docket No. 7, Exhibit A.

8) In his opinion Arbitrator Ludoff stated:

The Arbitrator has considerable sympathy for an employee who is injured on the job and forced to lose work time and possibly the job itself. Of course, Workmen's Compensation and possibly additional provisions in the collective bargaining agreement are designed to assist such injured employees. On the surface, it would appear that the language of Article 5, Section 9 would protect the grievant in this case, since she has not accepted any final settlement under Workmen's Compensation. However, it would appear that the obvious purpose of

the provision is to protect the injured employee who is off work during a period of recuperation when there is expectation that he will be able to return to work. It is not reasonable that an employee could delay indefinitely filing for a settlement and thereby avoid separation when it is unlikely that he or she will be able to resume the full duties required by the Employer. While the Arbitrator recognizes that he cannot change the language of the contract, it is not uncommon for arbitrators to interpret the contract in a way that is consistent with the intent of the parties and in a way that does not provide an unreasonable result. In the present case, it does appear that the grievant has attempted to stifle the clear intent of the agreement by delaying her settlement. According to the interpretation of the provisions by Charles Spond, the Company could not terminate an employee or remove them from the seniority list if they never file for a Workmen's Compensation settlement. Such an interpretation would never have been the intent of the Company in negotiating the provision, and renders a result which is both illogical and unreasonable.

Docket No. 7, Exhibit A.

## CONCLUSIONS OF LAW

The Magistrate, having made Findings of Fact, makes the following Conclusions of Law:

1) Plaintiff has filed a motion for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure. As such, plaintiff has certain responsibilities/burdens to meet to justify the granting of the relief requested as a matter of law. As a party moving for summary judgment, the movant has the initial burden of proving the nonexistence of any genuine issues of material fact and that it is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–160, 90 S.Ct. 1598, 1608–1610, 26 L.Ed.2d 142 (1970); *Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir.1976). Once the movant has sustained its initial burden, then it is incumbent on the nonmovant to

"set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Furthermore, the nonmovant may not rely on the pleadings themselves to establish the existence of a genuine issue of fact after the movant has surpassed its initial burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

With regard to the evidentiary standards upon which a motion for summary judgment must be determined, the United States Supreme Court stated:

If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—"whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." [*Improvement Co. v.*] *Munson*, [14 Wall. 442], at 448 [20 L.Ed. 867 (1872)].

*Anderson, supra*, 477 U.S. at 252, 106 S.Ct. at 2512.

With these standards in mind, the Magistrate must review the record to determine whether this particular case is a proper one for summary judgment in favor of plaintiff.

2) In *Eberhard Foods, Inc. v. Handy*, 868 F.2d 890 (6th Cir.1989), the Sixth Circuit stated:

The standard of review in arbitration cases is narrow. *Anaconda Co. v. Dist. Judge No. 27 of Int'l Ass'n of Machinists*, 693 F.2d 35 (6th Cir.1982). Indeed, an arbitrator's decision should be upheld unless it fails to "draw its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). In *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), the Court again advised lower federal courts to be more deferential to the arbitration process. There it reversed a Fifth Circuit decision setting aside an arbitrator's decision which had concluded that there was not "just cause" for discharge on grounds of possession of marijuana on the job. The Court explained:

> Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.... So, too, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. If the courts were free to intervene on these grounds, the speedy resolution of grievances by private mechanisms would be greatly undermined....

*Id.* [484 U.S. at 37–38, 38] 108 S.Ct. at 371, 372.

\* \* \* \* \* \*

As *Misco, supra,* teaches, it is the language of the CBA and the arbitrator's own construction thereof, which determines the scope of the arbitrator's authority. [484 U.S. at 36–40] 108 S.Ct. at 370–371. In the case at bar, the agreement is unclear on the question of the arbitrator's authority to determine the appropriate sanction after finding a violation of work rules.

*Id.,* 868 F.2d at 891–892.

3) As the Sixth Circuit emphasized in *Eberhard,* the question which is presented to this Court is whether the language of the contract is sufficiently clear so as to deny the arbitrator the authority to interpret the agreement. *Id.,* 868 F.2d at 893. Article 5, Section 9 of the contract provides an employee shall retain previously accumulated seniority and shall continue to accumulate seniority during the time of illness unless three specific events occur. None of the three conditions provided by Section 9 have occurred in the case at bar. The arbitrator chose to interpret this section so as to place a limit upon the period by which Ms. Collard could obtain seniority. No such limitation exists in this section. Furthermore, the language of the contract is clear that Ms. Collard would continue to accumulate seniority unless a specific enumerated event occurred. Since the language of the contract is clear as to the issue of seniority, the Magistrate finds pursuant to *Eberhard,* the arbitrator exceeded his authority in placing a limitation on Ms. Collard's ability to accumulate seniority. Therefore, the Magistrate will recommend the decision of the arbitrator be set aside and defendant restore Ardeana Collard to the seniority list of the Union.

## RECOMMENDATIONS

The Magistrate, having made Findings of Fact and Conclusions of Law, makes the following Recommendations:

1) Summary Judgment be granted for plaintiff;

2) The decision of the arbitrator be set aside; and

3) Defendant restore Ardeana Collard to the seniority list of the General Drivers, Warehousemen & Helpers, Local Union No. 89, Affiliated with the International Brotherhood of Teamsters, Chauffeurs, Ware-

**84**

housemen and Helpers of America, AFL–CIO.

Date: September 25, 1989