The AMERICAN INSURANCE COMPANY, Plaintiff,

v.

The CITY OF DAYTON, Defendant.

No. C–3–78–350.

United States District Court, S. D. Ohio, W. D.

Nov. 19, 1980.

Jacob K. Stein, Paxton & Seasongood, Cincinnati, Ohio, for plaintiff.

---

Thomas G. Petkewitz, City Atty., Dayton, Ohio, for defendant.

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; JUDGMENT TO PLAINTIFF AND AGAINST DEFENDANT; ENTRY OF JUDGMENT; TERMINATION ENTRY

RICE, District Judge.

This action arises out of a dispute between plaintiff, The American Insurance Company ("American") and defendant, The City of Dayton ("City") concerning the amount due to American from the City under the terms of two three-year term insurance contracts entered into by the parties on April 14, 1972 and June 1, 1975, respectively. American alleges that under the retrospective premium endorsement provisions in each contract, the City was to pay retrospective premiums, as computed and adjusted retrospectively, based upon losses incurred by the City during specified policy periods. American alleges that the City has failed and refused to pay retrospective premiums for several policy periods, which total $110,934. The City averred in its Answer that it has paid American all sums due on both contracts and that American improperly calculated the amounts allegedly due on reserves for claims which have been closed and on excess reserves for pending claims.

American has moved this Court for summary judgment on the ground that there are no genuine issues of material fact and that, on the basis of the documentation attached to its motion and the affidavit of its credit manager, it is entitled to judgment for the entire amount plus interest as a matter of law. The exhibits attached to said motion consist of copies of both the 1972 and 1975 contracts; the computed adjustment premiums for each period in question; a history of some payments made by the City under the retrospective premium provisions; and the affidavit of American's

Credit Manager, which states the truthfulness and accuracy of all of the aforementioned attachments and that the City has failed to pay a total of $110,934 in retrospective premiums, despite demand for same.

The City filed a Motion Contra to Plaintiff's Motion for Summary Judgment. The City contends therein that there are genuine issues of material fact in this case. It asserts in its memorandum that within a span of four months American provided the City with three different loss figures for one policy period. On the basis of that apparent discrepancy, the City contends that it cannot determine which, if any, of these figures is correct and what, if any, effect a change in those figures has on the retrospective premiums due. Defendant further argues that even assuming that the loss figures as of plaintiff's December 1, 1979 valuation are correct, those figures have changed as of plaintiff's March 1, 1980 valuation. The City claims that those changes and some that have occurred since March 1, 1980 are due to settlements or closings of certain claims which had been considered by American in arriving at its December 1, 1979 valuation. Because of those settlements and closings, the City contends that there has been a reduction in their incurred losses which should substantially decrease the retrospective premiums that are presently due from the City. Essentially, the City seems to be arguing that despite the attachments submitted by American with its Motion for Summary Judgment, the City cannot determine the amount of retrospective premiums due at the present time, and thus, there are genuine issues of material fact. In support of its motion contra, the City submitted several computer print-out sheets for each policy in question, captioned Automobile Claims Exhibit and Automobile Claims Recapitulation, bearing the "Valuation Date 3–01–80." Also attached to the motion are judgment entries and a release relating to the two insurance claims referred to by the City in its memorandum. Finally, the City also

submitted the affidavit of its Purchasing Agent which states that defendant's Exhibits A and B are Automobile Claims Recapitulations, valued by plaintiff as of March 1, 1980; that certain amounts reflected in those exhibits represent reserves for claims; and that the plaintiff's computation of retrospective premiums valued as of December 1, 1979 yields an excessive amount in light of current loss valuation.

American, in its response to defendant's motion contra, contends that contrary to the City's claims, there is no genuine issue of material fact with regard to the amount of retrospective premiums due to American under the terms of the contracts. It asserts that there is no inaccuracy in its documentation. According to American, there are no discrepancies in the loss figures reported to the City. First, it explains that the December 1, 1979 valuation, summarized in the January 28, 1980 Retrospective Premium Advice (Plaintiff's Exhibit G), contains two different loss figures. The first figure is the Total Incurred Losses. The second figure, which is $50,000 less than the first, is the amount of losses which are subject to retrospective premium computation. In other words, $50,000 of the Total Incurred Losses were not subject to the retrospective premium provisions of the 1975 contract.

The plaintiff also asserts that the difference between the December 1, 1979 and March 1, 1980 loss figures is not a discrepancy and that the difference in the two figures has no bearing on the amount of the retrospective premium due from the City. It suggests that the figures differ because the valuation date is different and that the December 1, 1979 valuation represents an actual premium computation and bill as of that date, while the March 1, 1980 valuation is merely a quarterly valuation sent to the City for its information only.

Additionally, American contends that what has occurred is that the City of Dayton has simply stopped paying retrospective premiums as they become due under the contract in hopes that all claims which form the basis for retrospective premium computations will be settled in the City's favor. American acknowledges that disposition of these claims in the City's favor might entitle the City to a return of the premiums presently due but contends that the City's current failure to pay the premiums as computed, improperly denies American the use of those funds in the interim period. American further contends that the affidavit of the City's Purchasing Agent in no way controverts the accuracy of American's claims, and therefore, it is entitled to judgment as a matter of law.

This Court has reviewed the pleadings, the memoranda, and the materials submitted by the parties in support of their positions. Upon careful consideration of same, the Court concludes that the plaintiff has demonstrated the absence of any genuine issues of material fact in this action, and that the defendant has not controverted the accuracy of plaintiff's claims. The purpose of the following discussion is to set forth the reasoning upon which the Court concludes that American's motion is well taken and should, therefore, be granted in its entirety.

## DISCUSSION

Rule 56(c), Fed.R.Civ.Pro., provides in pertinent part:

"The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Rule 56(e), Fed.R.Civ.Pro., provides in pertinent part:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein. ... When a

motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

In *Felix v. Young*, 536 F.2d 1126, 1130 (6th Cir. 1976), the Sixth Circuit recognized that "[s]ummary judgment is a useful procedure for reaching the merits of a case short of conducting a full-blown trial." However, "if a question of fact remains, the motion for summary judgment should be deferred and the case should proceed to trial." *Id.* The Court explained the burdens on the parties in a motion for summary judgment as follows:

"Under Rule 56(c), the moving party always has the initial burden of showing the absence of a genuine issue of material fact and that he is entitled to a judgment as a matter of law. (citation omitted) When the initial burden has been supported by additional materials, the nonmoving party must then come forward with specific facts which demonstrate to the Court that there is a genuine issue for trial. (citation omitted) However, the fact that the movant's affidavits are uncontroverted does not necessarily mean that summary judgment should be granted—the ultimate burden remains on the moving party."

*Id.* at 1131. Although uncontroverted affidavits do not *necessarily* mean that summary judgment is warranted, statements contained in an affidavit which are not controverted are to be accepted as true. *See Fitzke v. Shappell*, 468 F.2d 1072, 1077 (6th Cir. 1972).

American contends that its memoranda, affidavit, and documentary evidence show that it has performed its obligations under the insurance contracts; that the City has unjustifiably failed to pay the retrospective premiums due under the contracts; and that the City owes to American the sum of $110,934. The Court agrees that on the basis of the aforementioned materials, American has met both its initial and ultimate burden of proving the propriety of summary judgment. After discussing what those materials tend to show, the Court will address the contentions raised by defendant and set forth its reasons for concluding that neither those contentions nor the materials filed in support thereof establish the existence of any genuine issue of material fact for trial.

Attached to American's Motion for Summary Judgment is the affidavit of R. D. Weslow, Credit Manager for American at all times pertinent to this action. All of the statements made by Weslow therein are based on his personal knowledge (Para. 1). Weslow states that Plaintiff's Exhibits A & B are true copies of the 1972 and 1975 insurance contracts entered into by the parties (Para. 2 & 3). Weslow further states that Plaintiff's Exhibits C through H are true copies of the retrospective premium advices submitted to the City by American (Para. 4), and that the amounts of the retrospective premiums set out in those exhibits are correct and were computed according to the terms of the retrospective premium endorsements in the contracts (Para. 8). Weslow further states that Plaintiff's Exhibit I is a true and accurate summary of the retrospective premium adjustments and payments made by the City (Para. 5). Finally, Weslow states further that the total amount of retrospective premiums owing from the City is $110,934, and that the City has refused to pay the stated amount despite repeated requests (Para. 9 & 10).

Both the 1972 and 1975 contracts contain a "Retrospective Rating Plan Agreement" which was signed and accepted for the City by R. E. Herman, Purchasing Agent, as authorized representative. The agreement reads in part, "It is agreed that we have elected to accept the rule, rating values and premium adjustment provisions of retro-

spective rating plan indicated below...." The plan referred to is "Retrospective Rating Plan D."

"Retrospective Premium Endorsement—Three Year—Plan D" is included in both Exhibits A & B. The following provisions are contained therein:

"3. Definition of Terms Used in Computation of Retrospective Premium:

(a) "Standard premium" means the premium for the insurance subject to Plan D computed in accordance with the provisions of the policies, other than this endorsement and exclusive of the application of any premium discount endorsement.

. . . . .

(d) "Incurred losses" means the sum of:

(1) all losses, including medical, actually paid,

(2) *reserves for unpaid losses as estimated by the Company,* (emphasis added)

. . . . .

(5) allocated loss adjustment expenses . . . .

. . . . .

4. Payments and Computation of Premium for Insurance Subject to Plan D.

. . . . .

(b) Retrospective Premium. A computation of the retrospective premium applicable to the first annual period, based upon the standard premium and incurred losses for such period, *such losses to be valued as of a date six months after the expiration of such period,* shall be made by the Company as soon as practicable after such valuation date. (emphasis added)

A computation of the retrospective premium, applicable to the first two annual periods, based upon the standard premium and incurred losses for such period, *such losses to be valued as of a date six months after the expiration of*

*the second annual period,* shall be made by the Company as soon as practicable after such valuation date. (emphasis added)

A computation of the retrospective premium, based upon the standard premium and incurred losses for the three year period, *such losses to be valued as of a date six months after the expiration of such period,* shall be made by the Company as soon as practicable after such valuation date. (emphasis added)

Such computation of the retrospective premium for the three year period shall be final if (1) all claims have been closed or if it is apparent that the retrospective premium will exceed the maximum retrospective premium, and (2) within ninety days from approval of such computation by the organization having jurisdiction, the Company, with the agreement of the named insured, requests of such organization that the computation be final.

If such computation is not final, a further computation of the retrospective premium based upon incurred losses valued as of a date eighteen months after termination of the policies, shall be made by the Company as soon as practicable after such valuation date. Such *further computation shall be final* unless, within ninety days from approval of such computation by the organization having jurisdiction, the Company or the named insured requests of such organization that a further computation be authorized. *Any subsequent computations, to be made only at intervals of twelve months,* shall each be subject to a similar procedure." (emphasis added)

The Retrospective Premium Endorsement in the 1975 contract has the following provision regarding cancellation of the contract: "In the event of cancellation by the named insured of the policies . . ., the premium for insurance subject to Plan D shall be deter-

mined in accordance with the other provisions of this endorsement. . . ." (Plaintiff's Exhibit B)

The 1972 contract, # AS–171 72 08, was entered into on April 14, 1972. (Plaintiff's Exhibit A). By agreement, the expiration date of the policy was extended to June 1, 1975. (Plaintiff's Exhibit A). Thus, under this contract, there were three annual policy periods, April 14, 1972–73, 73–74, and 74–75, and one policy period from April 14, 1975 to June 1, 1975. The second contract, # LA–229 51 54, became effective on June 1, 1975, and was to have expired on June 1, 1978. This contract was cancelled by the City, effective June 1, 1977; thus, under the second contract, there were only two annual policy periods, June 1, 1975–76, and 76–77.

Examination of plaintiff's Exhibits C through H tends to show that the plaintiff has complied with the terms of the retrospective premium endorsements agreed upon by the parties in both contracts. Each of these "Retrospective Premium Advices" bears a valuation date six months after the expiration of the policy period as required under the endorsements. Each advice clearly indicates for which annual policy period the computations have been performed. Each advice also indicates whether, as a result of the adjustments, the City is entitled to a return premium or an additional premium is due from the City. Each advice apprises the City whether the computations are final or whether additional adjustments are forthcoming.

Plaintiff's Exhibits C and E are duplicates of the same advice for computations under the 1972 contract. Exhibit H is the final computation of retrospective premiums under the 1972 contract. Plaintiff's Exhibits D, F, and G are retrospective premium advices computed under the 1975 contract. They bear valuation dates of December 1, 1977, 1978, and 1979, respectively. All three indicate that further adjustments are forthcoming which means that claims arising under the 1975 contract have not been closed. Plaintiff's Exhibit G has a valuation date which is eighteen (18) months after the June 1, 1977 cancellation of the contract, which is in compliance with the terms of the endorsement. The following chart summarizes the information contained on the Retrospective Premium Advices, Exhibits C through H:

| Ex.# | Contract | Annual Policy Period | Valuation Date | Statement Date | Retrospective Premium Adjustment computed under Plan D | Additional Premium Due | Return to Insured/Credit | Final Adjustment Yes/No |
|------|----------|----------------------|----------------|----------------|--------------------------------------------------------|------------------------|--------------------------|-------------------------|
| * | 1972 | | | 5/12./8 | Return (R) $3,388.00 | | $3,388.00 | No |
| C E | 1972 | 4/14/72-73 | 12/1/78 | 10/10/79 | 0 | 0 | 0 | No |
| C E | " | 4/14/73-74 | " | " | 0 | 0 | 0 | No |
| C E | " | 4/14/74-75 | " | " | Additional premium $1429.00 | $1429.00 | 0 | No |
| C E | " | 4/14/75-6/1/75 | " | " | 0 | 0 | 0 | No |
| H | 1972 | 4/14/72-72 | 12/1/79 | 2/26/80 | 0 | 0 | 0 | Yes |
| H | " | 4/14/73-74 | " | " | 0 | 0 | 0 | Yes |
| H | " | 4/14/74-75 | " | " | $1,864 (R) | | $1864 | Yes |
| H | " | 4/14/75-6/1/75 | " | " | 0 | 0 | 0 | Yes |
| D | 1975 | 6/1/75-76 | 12/1/77 | 5/12/78 | $61,768(A) | $61,768 | 0 | NO |
| D | " | 6/1/76-77 | " | " | $7,074(A) | $7,074 | 0 | NO |
| F | 1975 | 6/1/75-76 | 12/1/78 | 10/12/79 | $24,645(a) | | 0 | |
| F | " | 6/1/76-77 | " | " | $15,363(R) | $9282 (NET) | 0 | NO |
| G | 1975 | 6/1/75-76 | 12/1/79 | 1/28/80 | $13,850(R) | | 0 | NO |
| G | " | 6/1/76-77 | " | " | $50,483(A) | $36,633 (NET) | 0 | NO |

Total Amount of Additional Adjustment:     $116,186 (total of column 7)

Total Amount of Return Adjustment:     -5,252 (Total of column 8)

Total Amount Due From City (NET) as of 1/28/80:     $110,934

\* No Retrospective Premium Advice reflecting this credit was submitted to the Court. However, the City has no disputed the accuracy of this amount, and it is presumed to be correct.

It should be noted that, at the bottom of the chart, the Court performs its own calculations based on the plaintiff's Exhibits C through H and arrives at a figure which appears to be the total amount of retrospective premiums presently due from the City

as of December 1, 1979. This figure was reached by subtracting the total amount of return premiums (column 8) from the total sum of additional premiums assessed for the various annual policy periods. That net figure is $110,934, which is the amount that American claims is due from the City. On the basis of the materials submitted by American, it appears to the Court that American's arithmetic is correct, and that it has met its initial burden of verifying the total amount due to it from the City under the two insurance contracts.

The question remains whether the City's contentions or submissions controvert the documentation provided by the plaintiff or any of plaintiff's claims. It is noteworthy that the City admits in its memorandum that it entered into the contracts in question and that plaintiff's Exhibits A & B are true copies thereof. It is also significant that the defendant does not claim that any of the provisions of those contracts are ambiguous or subject to divergent interpretation. Nor does the City deny that it agreed to be bound to the Retrospective Premium Endorsements, previously discussed. The substance of defendants' contentions do not address the terms of the contract; instead, the City contends that American has inadequately verified its figures; has provided inconsistent loss figures which bear on the amount of retrospective premiums due; and has assessed excessive premiums in light of current valuation. As will be shown, these contentions are without merit, and in no way establish the existence of an issue of fact which is material to this lawsuit.

The City contends that American has provided it with three different loss figures for a single policy period under the 1975 contract, and thus, has failed to adequately verify the amount of retrospective premiums allegedly due from it. The loss figures cited by the City are:

1. $165,041 (plaintiff's Ex. G, at 1, valuation date, December 1, 1979)

2. $115,041 (plaintiff's Ex. G, at 3, valuation date, December 1, 1979)

3. $115,031 (sic—should be $155,031) (defendant's Ex. A, valuation date, March 1, 1980).

■ Looking first at the asserted inconsistency in plaintiff's Exhibit G, it is obvious that the City misread the Retrospective Premium Advice. In the column for the June, 1975–76 policy period, $165,041 is the figure given for Total Incurred losses. However, subtracted from this amount is $50,000, which represents "Losses Not Subject to Retro (page 1). Thus, of the $165,041 total losses incurred by the City, only $115,041 was subject to the retrospective premium endorsement. This figure is the same as that appearing on the third page of the exhibit and represents the total of "Losses Subject to Retro" ($105,031), and the total of "Reserve for Allocated Expense" ($10,010), both of which are specifically provided for in the endorsement. Thus, the inconsistency pointed out by the City in Plaintiff's Exhibit G is the result of miscalculation on the part of the City, and not the result of inadequate verification by American.

As indicated above, the third loss figure appears on defendant's Exhibit A, which bears a valuation date of March 1, 1980. The City argues that because the loss figure is not identical in the December 1, 1979 and March 1, 1980 valuations, it cannot determine which figure is correct or what effect a change in those figures has on the retrospective premiums due. The Court finds the City's argument unpersuasive. When the City received the Retrospective Premium Advice (Plaintiff's Exhibit G), bearing the December 1, 1979 valuation date, it had received a computation in accordance with the express provision of the Retrospective Premium Endorsement, which requires the plaintiff to compute retrospective premiums as of a date eighteen (18) months after the termination of the policy (See Retrospective Rating Plan D, # 4(b), Plaintiff's Exhibits A & B). Plaintiff's Exhibit G, which is a Retrospective Premium Advice apprises the City that as of the December 1, 1979 valuation, it owed American $36,633 in additional premiums for the stated policy periods.

There is no evidence in the record to indicate that this amount was to be diminished or increased in any way by the statement bearing the March 1, 1980 valuation date. Defendant's Exhibit A is not a retrospective premium advice and does not purport to be a bill for additional premiums or an advice that a return premium has been assessed. There is nothing before the Court to indicate that defendant's Exhibit A is anything other than what the plaintiff explained it to be, that is, a statement provided to the City only for its information.

The Court also notes that under the terms of the endorsement, American is not required to submit a further computation of retrospective premiums until December 1, 1980. The endorsement expressly provides that "[a]ny subsequent computations, [are] to be made only at intervals of twelve months." (Retrospective Rating Plan D, # 4(b), Plaintiff's Exhibits A & B). As the Court reads that provision, American could, theoretically, send the City statements of its incurred losses, valued quarterly, monthly or even weekly if it were so inclined, and each of those valuations could reflect a different figure of the City's incurred losses. However, at no time before the end of the twelve month period, could American compute or bill the City for any additional premiums. At the same time, the City's incurred losses could, because of the closing of claims, be reduced to zero, but until the expiration of the twelve month period, the City is not entitled to a return of premium. This appears to be the arrangement that the parties agreed to in the endorsement; consequently, the Court believes that the existence of a different loss figure valued at an interim date, between the contractually required computations of premiums, has no bearing whatever on the amount of retrospective premiums due from the City.

Finally, the City contends that even if the loss figures valued as of December 1, 1979 are correct, the retrospective premiums computed on the basis of those figures are now excessive. In support of this contention, the City discusses two claims that arose under the 1975 contract, one involving Leslie Nelson Johnson and the other involving Josephine Lopez. The documents submitted by the defendant show that the Johnson claim was settled on March 18, 1980 and that an appeal by Lopez was dismissed by the Ohio Supreme Court on March 20, 1980. (Exhibits C & F). The City reasons that since the Johnson claim was settled for $15,000, its incurred losses under the 1975 contract should be reduced by $35,000, since the reserve that had been set aside for that claim was $50,000. The City reasons further that since the Lopez appeal was dismissed, and it is unlikely that the United States Supreme Court will grant certiorari, this claim is all but settled and, therefore, will reduce its incurred losses by $100,500, the amount set aside as a reserve on this claim.

Contrary to the defendant's contentions, the settlement of the Johnson claim and dismissal of the appeal in the Lopez litigation do not, in this Court's opinion, establish the existence of any genuine issue of material fact concerning the amount of retrospective premiums that are due from the defendant at the present time. Any adjustment deriving from these occurrences will, under the terms of the endorsement, be computed at the end of the twelve month interval, that is, as of December 1, 1980. Until that time, the City is not entitled to a further computation or adjustment.

If the contract did not expressly provide that further computations would occur only at subsequent twelve month intervals and not at shorter intervals, the City's position might be more compelling in that it has shown that its actual incurred losses have been reduced since the December 1, 1979 valuation. However, the Court has before it no evidence to support the City's position that this reduction, occurring subsequent to the last prescribed computation, should be considered either by American or by this Court to offset the amounts of additional premiums currently due from the City. Since the City does not challenge the provisions of the retrospective premium endorsement, the Court must assume that the City agreed to be bound by its terms. As such,

the City must, under those terms, wait until the next scheduled computation before it is entitled to any adjustments which may be forthcoming because of the closing of the Johnson and Lopez claims.

The Court has considered the City's claims of improper verification and excessive computation of retrospective premiums and has found them unconvincing. Nothing submitted by the City has substantiated those claims nor did the City come forward with any specific facts controverting American's claims or establishing the existence of any genuine issue for trial. Therefore, the Court concludes that American has met its burden under Rule 56(c), Fed.R.Civ.Pro., and is entitled to a judgment as a matter of law in the amount of $110,934 plus interest.

WHEREFORE, based upon the aforesaid, this Court sustains the plaintiff's Motion for Summary Judgment and, in so doing, grants judgment to the plaintiff and against the defendant in the amount of $110,934 plus interest at the rate of 6% per annum from date plus costs of suit.

The captioned cause is ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, sitting at Dayton.